810 P.2d 1082

Glenn L. O'DELL and Sandra Joy O'Dell, individually and as husband and wife, Plaintiffs–Appellants–Cross Respondents,

and

The Idaho Human Rights Commission, Plaintiff–Intervenor–Appellant–Cross Respondent,

v.

John BASABE, individually and in his agency capacity, and J.R. Simplot Co., a Nevada Corporation, Defendants–Respondents–Cross Appellants.

No. 17421.

Supreme Court of Idaho,
Boise, February 1990 Term.

April 17, 1991.
Rehearing Denied April 17, 1991.

Skinner Fawcet & Mauk, Boise, for appellants O'Dell.  William L. Mauk, (argued).

Jim Jones, Atty. Gen., Leslie L. Goddard, (argued), Deputy Atty. Gen., Boise, for appellant Idaho Human Rights Com'n.

Howard & Owens, Coeur d'Alene, for amicus curiae Idaho Trial Lawyers Ass'n.  Kenneth B. Howard, Jr., (argued).

Elam Burke & Boyd, Boise, for respondent Basabe.  Bobbi K. Dominick, (argued).

Hawley Troxell Ennis & Hawley, Boise, for respondent Simplot.  Steven W. Berenter, (argued).

1990 OPINION NO. 163, FILED DECEMBER 28, 1990, IS HEREBY WITHDRAWN AND THIS OPINION IS SUBSTITUTED THEREFOR.

McDEVITT, Justice.

The J.R. Simplot Company ("Simplot") hired Glenn O'Dell in May, 1980.  Soon after he was hired, O'Dell went to work for the Land and Livestock Division of the company.  He eventually became the Division's Director of Administration for Human Resources, Loss Prevention, Control and Planning.  O'Dell's duties included monitoring practices and formulating and enforcing policies to eliminate unlawful discrimination in employment.  O'Dell worked directly under the Division President, John Basabe.  He reported to the president and corporate officers and served on several corporate committees.

In April 1983, O'Dell's assistant, Wilda Seibel, told O'Dell that she was being sexually harassed by the Division President, John Basabe.  O'Dell advised Seibel of her legal options and of the applicable company policies that prohibited sexual harassment and provided for internal investigation of harassment charges.  He also brought Seibel's complaint to the attention of the corporate President, the corporate Human Resources Director, and the corporate General Counsel.  These senior managers instructed O'Dell to inform them of any further developments.

The situation did not improve.  In June of 1983, Seibel filed suit against John Bas-

abe and Simplot. O'Dell was served with a subpoena to testify on her behalf.

A little more than one year later John Basabe called O'Dell to his office and fired him in front of three co-workers, whom Basabe had invited to be present. Basabe later testified at trial that if there had been enough room he probably would have invited the entire office staff to watch him fire O'Dell.

While Basabe told O'Dell that the official reason he was being fired was that his job was being abolished, he also said:

> Glenn, I'm going to tell you, looking you right in the eye, that I've got a personal friend that's a general in the National Guard, and if all this bullshit keeps up against this company that has been going on with that blonde, then I'm going to take all the facts I've got to this general.[1]

O'Dell claimed that this statement shows the real reason why he was fired. He alleges that the blonde referred to was Seibel, and that the reference to the National Guard general constituted a threat to O'Dell's position as a lieutenant colonel in the United States Army Reserve. Defendants claimed that Basabe's comment was incidental to the real reason that O'Dell was fired—that O'Dell's job was abolished due to budget constraints.

After he was fired, O'Dell consulted the corporate Director of Human Resources, Gary Wallis. Upon hearing the tape recording of Basabe firing O'Dell, Wallis commented, "The biggest problem you have is to decide what side of Maui you're going to buy." However, Wallis had known that Basabe was going to fire O'Dell and Wallis had actually advised Basabe on how to conduct the termination. O'Dell believed that his position was supported by the Simplot Company's numerous personnel policies, employee handbooks and rules of conduct which, among other things: (a) declared that no employee would be discharged without "just cause;" (b) established procedures for grievances

and disciplinary actions; and (c) prohibited both sexual harassment and retaliation against those who participated in bringing sexual harassment charges. O'Dell filed a formal grievance.

For the next month, seeking a response to his grievance, O'Dell wrote letters and memos to corporate officers. Receiving little or no response, he filed for unemployment benefits on October 16, 1984. Just a few days later, Simplot's General Counsel wrote to O'Dell telling him that the company was placing him on an indefinite "administrative leave," that he would receive pay, and that his benefits would be resumed "pending final review and resolution of the grievance." The letter indicated that the review would be completed by October 31, 1984.

O'Dell received full pay for the next seven months, even though he had no duties. During this time, he and Simplot officers negotiated in an attempt to resolve their dispute. After a protracted series of negotiations and offers that O'Dell found unsatisfactory, Simplot finally offered O'Dell "unconditional reinstatement" to his former position or, alternatively, reinstatement to the "newly created" position as Director of Risk Management at the Food Division. The Food Division job had similar benefits to his former position except it did not offer the same eligibility for discretionary bonuses.

On March 1, 1985, O'Dell accepted the unconditional reinstatement to his former job. The necessary arrangements were made and O'Dell was to return to work near the end of March, 1985. On March 12, 1985, in order to preserve his claim of a civil rights violation, O'Dell filed a complaint with the Idaho Human Rights Commission based upon his discharge in September of 1984.

Sometime after O'Dell filed his complaint with the Idaho Human Rights Commission, Simplot canceled the originally agreed upon reinstatement date and set another, ex-

---

**1.** O'Dell, suspecting the worst, took a hidden tape recorder into Basabe's office and tape re-

corded the entire incident. Thus, the quote.

plaining that it needed additional time to make arrangements. This second date was also canceled by Simplot, and a third date was set. Finally, on April 19, 1985, a few days before O'Dell was to report back to work, Simplot rescinded its offer to reinstate O'Dell to his old job and unilaterally directed him to report to the Food Division job.

Taking the position that he was constructively discharged, O'Dell rejected Simplot's directive and applied for unemployment benefits. He took his case to the Industrial Commission, which ultimately denied his claim.

On October 30, 1985, O'Dell and his wife, Sandra, filed a ten count complaint and request for a jury trial in the district court. The ten counts included: (1) retaliatory discharge; (2) breach of employment contract; (3) breach of public policy; (4) conspiracy to violate O'Dell's civil rights in violation of the Idaho Human Rights Act; (5) breach of a covenant of good faith and fair dealing; (6) invasion of privacy; (7) intentional infliction of emotional distress; (8) defamation; (9) repudiation of contract for reinstatement; and (10) loss of consortium.

On March 4, 1986, the Idaho Human Rights Commission filed a motion to intervene as a plaintiff on the issue of illegal retaliation in violation of the Human Rights Act. The motion was granted. That same day, the trial court issued a Memorandum Opinion and Order in which it granted the defendants' motion for summary judgment on the claims of civil conspiracy and breach of a covenant of good faith and fair dealing. The scope of the case was further reduced in April, 1987, when the trial court granted O'Dell's motion to voluntarily dismiss the three individually named defendants.

The jury trial finally commenced on May 12, 1987. The defendants were John Basabe, in his agency capacity, and the J.R. Simplot Company. After O'Dell finished presenting his case in chief, Simplot moved for a directed verdict. The trial court denied the motion on all counts except for O'Dell's claims of defamation, invasion of privacy, and intentional infliction of emo-

tional distress. O'Dell's attorney acquiesced in the court's dismissal of the intentional infliction of emotional distress claim, with the understanding that the evidence that was presented on this issue was equally relevant and admissible on the surviving issues of wrongful discharge, breach of public policy, and punitive damages.

Following presentation of their case in chief, the defendants again moved for a directed verdict. The trial court granted the motion only as to O'Dell's breach of public policy claim. At this time, the court also reversed its prior decision in which it dismissed O'Dell's claim for intentional infliction of emotional distress. In doing so, the court ruled that O'Dell was not prejudiced by the earlier ruling, because all of the evidence that went to intentional infliction of emotional distress had been introduced on other claims.

The remaining five causes of action presented to the jury for determination were: (1) intentional infliction of emotional distress; (2) loss of consortium; (3) violation of the Idaho Human Rights Act; (4) breach of employment contract; and (5) breach of contract for reinstatement. On June 3, 1987, the jury returned its verdict. It found in favor of O'Dell on all five counts. It awarded damages summarized as follows:

1.  Lost wages and benefits from the time of discharge to the time of trial (back pay)—$35,000.00
2.  Lost wages and benefits to be incurred in the future (front pay)—$375,-000.00
3.  General damages for emotional distress—$5,000.00
4.  General damages for loss of consortium—$2,500.00
5.  Punitive damages under the Human Rights Act—$2,000.00
6.  Punitive damages for breaches of contract—$1,000,000.00

Judgment was entered upon the jury's special verdict on June 8, 1987.

On February 5, 1988, the trial court issued a Memorandum Opinion and Order in which it granted defendants' motion for a

judgment n.o.v. and, in the alternative, a new trial on various aspects of the original judgment. The net monetary effect of this opinion was to vacate all of the damage awards except for $1,000.00 in punitive damages for a single violation of the Idaho Human Rights Act and $5,000.00 in punitive damages for breach of contract. In response to this opinion and order, O'Dell filed a motion for reconsideration and clarification as well as a request for a complete disposition of the case. On May 4, 1988, the trial court issued a Second Memorandum Opinion and Order in which it upheld and clarified its decision of February 5, 1988. O'Dell appealed from both the February 5, 1988 and the May 4, 1988 opinions and orders.

## I.

## NEW TRIAL

Defendant Basabe filed a motion for new trial, or in the alternative, for remittitur of judgment, invoking the provisions of Idaho Rule of Civil Procedure 59, and "specifically subsections 59(a)(5); 59(a)(6); 59(a)(7)." Defendant J.R. Simplot Company filed a motion for judgment notwithstanding the verdict, or in the alternative, motion for new trial, or in the alternative, motion for remittitur pursuant to Idaho Rules of Civil Procedure 50 and 59. Simplot specifically cited Rule 50(b) in support of its motion for judgment n.o.v., and Rules 59(a)(1), (a)(5), (a)(6), and (a)(7) as the basis for a new trial.

The trial court in this case had the unenviable chore of wrestling with numerous legal issues upon which there was conflicting guidance from Idaho appellate court decisions, as well as determining the Rule of Procedure that might or might not pertain to each issue raised by the parties in their post trial motions.

After receiving extensive briefs and oral argument on these motions, the trial court entered its Memorandum Opinion and Order disposing of the issues in the order in which they had been determined by the jury on the special verdict form (appended hereto as Appendix 1).

After entry of the trial court's Memorandum Opinion and Order, plaintiff filed a "motion for reconsideration and clarification and request for complete disposition" in which plaintiff urged the trial court to more fully state the basis for its ruling. In response to this motion, the trial court again addressed the issues determined by the jury in the special verdict form and issued a second Memorandum Opinion and Order.

In each of its Memorandum Opinion and Orders, the trial court analyzed its responsibilities in considering a motion for new trial under Idaho Rules of Civil Procedure 59(a)(1), (a)(5), (a)(6), and (a)(7), as set out by this Court in *Robertson v. Richards*, 115 Idaho 628, 769 P.2d 505 (1987); *Quick v. Crane*, 111 Idaho 759, 727 P.2d 1187 (1986); *Dinneen v. Finch*, 100 Idaho 620, 603 P.2d 575 (1979); *Blaine v. Byers*, 91 Idaho 665, 429 P.2d 397 (1967); and *Mann v. Safeway Stores, Inc.*, 95 Idaho 732, 518 P.2d 1194 (1974), and undertook its reassessment of the evidence in light of those cases to enter its Memorandum Opinion and Orders.

Under I.R.C.P. 59(a)(1), the trial court must consider whether there has been any irregularity in the proceedings, or any order of the court or abuse of discretion which has deprived either party of a fair trial such that a new trial would be justified.

Rule 59(a)(5) is applicable when damages are so excessive or inadequate as to appear to be the result of partiality by the jury. As stated by this Court in *Quick v. Crane:*

> [I]f a trial judge discovers that his determination of damages is so substantially different from that of the jury that he can *only* explain this difference as resulting from some unfair behavior, or what the law calls "passion or prejudice," on the part of the jury against one or some of the parties, then he should grant a new trial.

*Quick v. Crane*, 111 Idaho at 769, 727 P.2d at 1197 (emphasis in original).

In *Sanchez v. Galey*, 112 Idaho 609, 733 P.2d 1234 (1986), this Court applied the rule

of *Quick v. Crane* in analyzing an order of remittitur or in the alternative a new trial entered by the trial court pursuant to I.R. C.P. 59(a)(5). Although the Court spoke of standards imposed under both Rule 59(a)(5) and (a)(6), it reversed the trial court for failing to specifically enter a finding that the amount of the jury verdict "appeared to be given under the influence of passion or prejudice."

In its directions to the trial court, the *Sanchez* Court stated:

> We remand to the trial court so that it may enter findings of fact as to whether he was, in fact, shocked by the jury award, or found such award unconscionable so as to have the appearance that it was given under the influence of passion or prejudice.

*Sanchez,* 112 Idaho at 616, 733 P.2d at 1241.

■ Rule 59(a)(6) motions, are analyzed under the test stated by this Court in *Blaine v. Byers,* 91 Idaho 665, 429 P.2d 397 (1967), as noted by the trial court:

> The rule that where there is any competent evidence, though conflicting, to sustain the verdict, the verdict will not be set aside has no application to a trial court in passing upon a motion for a new trial. Rather the discretion with which the trial judge is entrusted is a sound legal or judicial discretion, and the trial court may grant a new trial when it is satisfied the verdict is not supported by, or is contrary to, the evidence, or is convinced the verdict is not in accord with the clear weight of the evidence and that the ends of justice would be subserved by vacating it, or when the verdict is not in accord with either law or justice.

*Blaine v. Byers,* 91 Idaho at 670–71, 429 P.2d at 402 (citations omitted).

At this juncture it is important to carefully delineate the application of Rules 59(a)(5) and 59(a)(6). An examination of the Federal Rules of Civil Procedure or other jurisdictions' interpretation of those rules is not helpful, as Rule 59(a) originated in Idaho in the form of section 4439 of the Revised Statutes of 1887, and continued as I.C. § 10–602 until it was adopted as a rule with only minor language changes. The logical analysis of our prior cases dealing with Rule 59(a) leads us to the conclusion that Rule 59(a)(5) applies to motions for *remittitur, additur,* or a *new trial on the issue of damages* based upon excessive or inadequate damages. *Sanchez v. Galey,* 112 Idaho 609, 733 P.2d 1234 (1987); *Quick v. Crane,* 111 Idaho at 770, 727 P.2d at 1198 (1986); *Dinneen v. Finch,* 100 Idaho 620, 603 P.2d 575 (1979). Rule 59(a)(6) applies when the verdict is questioned based upon insufficiency of the evidence or a verdict contrary to law. *Hake v. De-Lane,* 117 Idaho 1058, 793 P.2d 1230 (1990); *Robertson v. Richards,* 115 Idaho 628, 769 P.2d 505 (1987); *Quick v. Crane,* 111 Idaho at 766, 727 P.2d at 1194 (1986).[2]

Finally, Idaho Rule of Civil Procedure 59(a)(7) permits the grant of a new trial where an error of law has occurred at trial.

Plaintiff and amicus curiae both urge this Court to require the trial court to state with greater specificity the reasons for granting a new trial under these various standards than were listed in the trial court's two orders. On this issue, plaintiff and amicus curiae advocate a stricter standard than that mandated by our prior cases.

■ Motions for a new trial and judgments n.o.v. have been issues that this Court has dealt with over a significant number of years,[3] and in so doing, has

---

**2.** *Hake v. DeLane* and *Robertson v. Richards* discuss the grant of a new trial where the verdict is not in accord with the clear weight of the evidence. Inherently, every verdict consists of two components. The first component establishes liability (or non-liability) on the claim. The second component establishes the relief to be afforded the parties. A careful reading of these cases establishes that this Court was analyzing a motion for a new trial as to the liability

component of the verdict under Rule 59(a)(6). This Court has used the term "verdict" to apply both to "liability" issues and "damage" issues.

**3.** *Garnett v. Transamerica Insurance Services,* 118 Idaho 769, 800 P.2d 656 (1990); *Smallwood v. Dick,* 114 Idaho 860, 761 P.2d 1212 (1988); *Soria v. Sierra Pac. Airlines, Inc.,* 111 Idaho 594, 726 P.2d 706 (1986); *Vannoy v. Uniroyal Tire Co.,* 111 Idaho 536, 726 P.2d 648 (1985); *Cheney*

effected an evolutionary change in the documentation requirements imposed upon trial courts faced with these post-trial motions. In the earlier cases, trial judges needed only to state a bare conclusion. That requirement was broadened over the years until in *Quick v. Crane*, this Court established the requirement that the trial court state its reasons for granting or denying new trials:

> "An appellate court should not focus primarily upon the outcome of the discretionary decision below, but upon the process by which the trial judge reached his decision. *In order for the appellate court to perform this function properly, it must be informed of the reasons for the court's decision. Unless those reasons are obvious from the record itself, they must be stated by the trial judge. ...*" As in *Soria v. Sierra Pacific Airlines, Inc.*, 111 Idaho 594, 726 P.2d 706 (1986); we therefore hold that the trial judge must disclose his reasoning for granting or denying motions for a new trial ... unless those reasons are obvious from the record itself.

\* \* \* \* \* \*

[I]f we are to preserve the exercise of sound judicial discretion at the trial court level, and if we are to avoid result oriented appellate review of such discretion, we must now take the next logical step, towards which much of our previous case law on the issue has led, and require the trial court to state its particular reasons for granting or denying motions for new trial and/or alternative remittiturs or additurs.

Of necessity, when the trial court *grants* one of these motions, it should state its reasons with particularity unless it is obvious from the record itself.

*Quick v. Crane,* 111 Idaho at 772–73, 727 P.2d at 1200–01, quoting *Sheets v. Agro-West, Inc.,* 104 Idaho 880, 888, 664 P.2d 787, 795 (Ct.App.1983) (emphasis in original) (addressing motions made pursuant to Idaho Rules of Civil Procedure 59(a)(5) and 59(a)(6)).

Thus, the issues presented to this Court in this case as to the trial court's rulings on the motions pursuant to Idaho Rules of Civil Procedure 59(a)(1), (a)(5), (a)(6), (a)(7), and 50(b), are whether the trial court stated with sufficient particularity the reasons for its rulings on the various motions for new trial and judgment n.o.v., or whether the bases for those rulings were obvious from

*v. Palos Verdes Inv. Corp.,* 104 Idaho 897, 665 P.2d 661 (1983); *Sheets v. Agro-West, Inc.,* 104 Idaho 880, 664 P.2d 787 (Ct.App.1983); *Luther v. Howland,* 101 Idaho 373, 613 P.2d 666 (1980); *Tibbs v. Sandpoint,* 100 Idaho 667, 603 P.2d 1001 (1979); *Dinneen v. Finch,* 100 Idaho 620, 603 P.2d 575 (1979); *Ryals v. Broadbent Dev. Co.,* 98 Idaho 392, 565 P.2d 982 (1977), *overruled on other grounds, Seppi v. Betty,* 99 Idaho 186, 579 P.2d 683 (1978); *Deshazer v. Tompkins,* 93 Idaho 267, 460 P.2d 402 (1969), *overruled, Mann v. Safeway Stores, Inc.,* 95 Idaho 732, 518 P.2d 1194 (1974); *Rosenberg v. Toetly,* 93 Idaho 135, 456 P.2d 779 (1969); *Archer v. Shields Lumber Co.,* 91 Idaho 861, 434 P.2d 79 (1967); *Blaine v. Byers,* 91 Idaho 665, 429 P.2d 397 (1967); *Mendenhall v. MacGregor Triangle Co.,* 83 Idaho 145, 358 P.2d 860 (1961); *Woodland v. Lyon,* 78 Idaho 79, 298 P.2d 380 (1956); *Walker v. Distler,* 78 Idaho 38, 296 P.2d 452 (1956); *Sanchotena v. Tower Co.,* 74 Idaho 541, 264 P.2d 1021 (1953); *Checketts v. Bowman,* 70 Idaho 463, 220 P.2d 682 (1950), *overruled, Meissner v. Smith,* 94 Idaho 563, 494 P.2d 567 (1972); *Poston v. Hollar,* 64 Idaho 322, 132 P.2d 142 (1942); *In re Randall's Estate,* 60 Idaho 419, 93 P.2d 1 (1939) (recognizing the rule that granting a new trial on conflicting evidence is discretionary with the trial court although the order granting the new trial was reversed as an abuse of discretion); *Riggs v. Smith,* 52 Idaho 43, 11 P.2d 358 (1932); *Egbert v. Twin Falls Canal Co.,* 52 Idaho 39, 11 P.2d 360 (1932); *Marker v. McCue,* 50 Idaho 462, 297 P. 401 (1931); *Stone v. Matthies,* 49 Idaho 277, 287 P. 951 (1930); *Tidd v. Northern P.R. Co.,* 46 Idaho 652, 270 P. 138 (1928); *Turner v. First Nat. Bank,* 42 Idaho 597, 248 P. 14 (1926); *Boomer v. Isley,* 42 Idaho 547, 246 P. 966 (1926); *Baillie v. Wallace,* 22 Idaho 702, 127 P. 908 (1912); *Penninger Lateral Co. v. Clark,* 20 Idaho 166, 117 P. 764 (1911); *Say v. Hodgin,* 20 Idaho 64, 116 P. 410 (1911); *Wolfe v. Ridley,* 17 Idaho 173, 104 P. 1014 (1909); *Buckle v. McConaghy,* 12 Idaho 733, 738, 88 P. 100, 101 (1906) ("It is sufficient to say that there is a substantial conflict and the rule is that, where the evidence presents a substantial conflict and the trial court, who saw and heard the witnesses and saw and heard all that was done and said in the case, has granted a new trial, his order will not be disturbed on appeal.") (Citations omitted.); *Jones v. Campbell,* 11 Idaho 752, 84 P. 510 (1906); *Brossard v. Morgan,* 6 Idaho 479, 56 P. 163 (1899); *Jacksha v. Gilbert,* 4 Idaho 738, 44 P. 555 (1896).

the record itself; and whether the trial court abused its discretion in acting upon the motions for new trial.

In making the determination of the adequacy of the trial court's stated reasons, we review the Memorandum Opinion and Order of the court entered the 29th day of April 1988 (second opinion and order) in the order in which the court dealt with the issues raised by the motions pursuant to Rules 59(a)(1), (a)(5), (a)(6), (a)(7), and 50(b) of the Idaho Rules of Civil Procedure. This portion of our opinion will address only the procedural sufficiency of the trial court's rulings. The trial court's substantive legal conclusions will be addressed separately.

■ 1. The trial court denied defendants' motions as to the question of liability for breach of employment contract, specifically holding that the finding of a breach of contract was "not contrary to the evidence nor against the weight of the evidence."

The court had earlier set forth in detail an analysis of the criteria for its review established by *Dinneen, Quick,* and *Robertson,* as previously discussed. It stated that there was evidence to support the jury's finding of liability, and that the jury's verdict was not against the clear weight of the evidence. The stated reasons for denying the motion on that issue are adequate.

■ 2. The trial court denied defendants' motions for judgment n.o.v. on the issue of the liability of the defendants to the plaintiff for wages, benefits, and other compensation on the basis that there was evidence to support that verdict of the jury. The trial court went on, however, to grant defendants' motion for new trial as to the damages awarded, for the reason that the "clear weight of the evidence indicates that agents of Simplot's, including the corporate president, attempted to relocate O'Dell within the business in a position comparable to that which he held. The clear weight of the evidence indicates that the damages suffered by O'Dell were the result of his rejection of this opportunity."

The foregoing findings were adequate reasons given with sufficient particularity by the court for both its denial of the motion for judgment n.o.v. as to the issue of liability and its grant of the motions for new trial as to the question of the damage award.

■ 3. The trial court ruled, as a matter of law, that "front pay" was not a remedy available to the plaintiff under its retaliatory discharge statutory claim or breach of contract payment claim and therefore set aside the damage award based on I.R. C.P. 59(a)(6) as being contrary to the law. That explanation is adequate. The trial court went on to hold that if that determination was overturned on appeal the court alternatively granted a new trial based on the fact that the clear weight of the evidence showed that the plaintiff's rejection of "opportunity for reinstatement" caused his damage and that the evidence as to the likelihood of those damages was "too speculative" to support the verdict. These statements are also adequate explanation of the court's reasons for granting the motion for new trial as to damages.

■ 4. The trial court denied defendants' motions for judgment n.o.v. and new trial as to Basabe's liability for unlawful conduct under the Idaho Human Rights Act. The trial court specified the evidence which it considered in denying the motion. That explanation is clearly sufficient under the standards of this Court.

■ 5. Defendants' motions for judgment n.o.v. were denied on the question of Simplot Company's liability to plaintiff for unlawful conduct under the Idaho Human Rights Act. The court explained that the evidence was clear that Basabe was the agent of Simplot at the time of the acts complained of in this count. That statement adequately elucidates the reasoning of the court in denying the motions.

■ 6. The trial court denied defendants' motions for judgment n.o.v. as to the amount of wages, benefits, and other compensation lost by plaintiff as a result of the unlawful acts of the defendants under the Idaho Human Rights Act, holding that

there was sufficient evidence to support the verdict. The court did, however, grant defendants' motion for new trial on the damage issue, pursuant to I.R.C.P. 59(a)(6), as being contrary to the weight of evidence. The court reasoned that the evidence showed that O'Dell's actions made it "unworkable for him to return to the Land and Livestock Division," and that O'Dell rejected a "comparable position." The explanation of the reasons for the court's action is adequate.

7. Defendants' motion for new trial on the issue of damages for future loss of wages for violations of the Idaho Human Rights Act was granted. Anticipating possible appellate reversal on this issue, the trial court stated again that the plaintiff caused his own damage by rejecting an alternate job, and further, that the award was based on speculative evidence. These reasons as stated suffice to explain the rationale for granting the motion for new trial.

8. The trial court denied defendants' motions for judgment n.o.v. and new trial on the issue of whether Basabe "willfully" violated the Idaho Human Rights Act. The court found sufficient evidence to support the verdict, and that the clear weight of the evidence was in accord with the verdict. That explanation is satisfactory.

9. The trial court denied the motion for judgment n.o.v. and new trial as to the "willful" nature of the acts of the Simplot Company, explaining that the willful acts of Basabe were attributable to the principal. That is sufficient explanation for the denial of the motion as to one of those "willful violations." The trial court granted a new trial on the issue of the second "willful violation" by Simplot. The trial court determined that it was obliged to do so, as it had granted a new trial on the question of whether Simplot breached the reinstatement agreement with the plaintiff, which was the second "willful violation" of the Idaho Human Rights Act alleged against Simplot. This is also adequate explanation for the action taken by the court.

10. The trial court granted motions for new trial on the issue of intentional infliction of severe emotional distress under I.R.C.P. 59(a)(1), due to irregularities occurring during the trial. The court's explanation was that it should not have submitted this issue to the jury after it had been withdrawn from the case at the close of plaintiff's evidence and the defendants had had no opportunity to respond. This explanation is sufficient.

11. The trial court granted motion for new trial for the damages awarded plaintiff as a result of the intentional infliction of emotional distress claim, with the explanation that to do so was required in order to be consistent with the action taken in paragraph 10 above, which explanation is adequate reason for the action taken by the trial court.

12. The trial court denied the motion for judgment n.o.v. on the question of liability for breach of contract to reinstate the plaintiff. However, the court granted a new trial on that issue. The explanation of the trial court was that O'Dell's resentment toward Basabe and Basabe's past conduct was the reason O'Dell could not be reinstated in his former position by the company. Therefore, it was O'Dell's conduct that resulted in his not being reinstated, not the company's. These statements sufficiently explain the actions taken by the trial court.

13. (A) The trial court granted a new trial on the question of the amount of wages, benefits, and other compensation lost as a result of the breach of the contract to reinstate, again for the reasons that the damages sustained by plaintiff were the result of his own "conduct" which had already been defined in previous holdings by this trial court. Those reasons are adequate explanation for the action taken by the court.

(B) The trial court granted defendants' motions regarding future damages on the basis that it was an error of law to have submitted the issue of future damages to the jury, as previously noted. The court went on to grant a new trial in the

event its primary ruling was overturned on appeal, for the stated reasons that the plaintiff's damages were attributable to his own conduct and that the evidence of future damage was too speculative. These reasons, in conjunction with the earlier analysis dealing with the question of future damages, were sufficient to explain the reasons for the trial court's action.

14. (A) The loss of consortium issue was dependent upon the issue of intentional infliction of emotional distress, which the court had earlier held was erroneously submitted to the jury. The reasons stated by the trial court are adequate explanations for its actions.

(B) The same reasoning as paragraph 14(A) above on the damage issue of loss of consortium was applied by the court. Again, the reasons stated by the trial court in conjunction with the issues contained in paragraph 14(A) are adequate explanation for the trial court's action.

15. (A) The trial court denied defendant's motion for judgment n.o.v. and new trial on the issue of Simplot's liability for punitive damages flowing from the initial breach of contract, noting the evidence of Basabe's conduct in O'Dell's initial termination and threats to his military career, which reasons are adequate explanation of the trial court's ruling.

(B) The trial court denied defendants' motions for judgment n.o.v. on the amount of damages awarded under the punitive damage verdict of the jury, but did not enter into the analysis and the findings required under *Dinneen v. Finch* and *Quick v. Crane*, to set aside the amount of the damage award. The court simply concluded that "the clear weight of the evidence indicates that only the $5,000 was justified." This was not an adequate explanation for setting aside the award when the trial court in the same finding determined that "there was evidence on which to base a larger award." Under these circumstances, the explanation of the trial court is not adequate to illuminate the rationale for setting aside the punitive damage award of the jury pursuant to Rule 59(a)(5) or

59(a)(6) of the Idaho Rules of Civil Procedure.

The requirement of *Quick v. Crane,* that the trial court must "state its particular reasons" for granting a motion for new trial is met when there is an adequate explanation to allow the reviewing court to understand the basis upon which the action was taken. The trial court must state both the factual basis for its decision and the particular rule of the Idaho Rules of Civil Procedure under which it is acting.

The trial court should require the same particularity of the party seeking relief pursuant to a motion for new trial, judgment n.o.v., or alternative additur or remittitur. Trial judges should not be required to attempt to guess at the applicable rule governing each charge of error claimed by the moving party. It is incumbent upon counsel to set out the legal basis for each motion, set forth the basis in the record upon which the motion rests, and specify the applicable Rule of Civil Procedure.

This Court has stated that, "[i]n the event that a motion for new trial fails to allege the grounds with sufficient particularity, the trial court should ordinarily deny the motion and this Court will affirm the denial." *Luther v. Howland,* 101 Idaho 373, 375, 613 P.2d 666, 668 (1980).

16. In *Smallwood v. Dick,* 114 Idaho 860, 761 P.2d 1212 (1988), this Court held that the trial court had discretion to grant a new trial on less than all issues (*i.e.* damages only) which would be reversed only if the appellate court in examining the record concluded the following three factors were established:

(1) the damages awarded by the jury were inadequate, (2) the issue of liability was close, and (3) other circumstances indicated that the verdict was probably the result of prejudice, sympathy, or compromise, or that for some other reason, the liability issue was not actually determined by the jury.

*Smallwood,* 114 Idaho at 865, 761 P.2d at 1217.

None of the parties urge on appeal that there is any evidence that the verdict of the jury was the result of prejudice, sympathy, or was a compromise verdict, nor do we discern any such evidence. This essential element of *Smallwood* not being contested, we need not consider the other factors.

In *Garnett v. Transamerica Insurance Services*, 118 Idaho 769, 800 P.2d 656 (1990), we reiterated the rule for granting a motion for judgment n.o.v. or directed verdict, stating:

Neither motion should be granted if there is substantial evidence to justify submitting the case to the jury or to support the verdict once it has been returned.

*Garnett*, 118 Idaho at 780, 800 P.2d at 667 (citations omitted).

Our review of the evidence here leads us to the conclusion that reasonable minds could have reached more than one conclusion from the evidence adduced, after every legitimate inference was given to the nonmoving party and the trial court properly denied the motions for judgment n.o.v.

In conclusion, except as specifically noted above on the issues of punitive damages and damages for violations of the Idaho Human Rights Act, we determine that the trial court adequately set forth the basis for the rulings on the defendants' motions for new trial.

BAKES, C.J., and BISTLINE and BOYLE, JJ., concur.

## II.

### FUTURE LOST WAGES.

The issue of lost wages was considered by the jury in the context of three theories: breach of the employment contract, breach of the contract to reinstate O'Dell to his former position, and retaliatory discharge under the Idaho Human Rights Act, I.C. § 67–5901–67–5912. The jury found liability on all three theories, and awarded O'Dell lost wages as damages, including $375,000 to compensate for future lost wages, otherwise known as "front pay," and $35,000 to compensate for past lost wages.

Upon hearing post-trial motions, the trial court granted defendants' motions as follows:

On both the breach of employment contract and retaliatory discharge claims the court concluded that the jury's finding of liability was supported by the evidence, but that the $375,000 award for future lost wages was not. On those issues the court cited two grounds for the grant of a new trial. First, it found that the award was against the clear weight of the evidence, as O'Dell had failed to mitigate his damages because he declined the alternative position which he was offered by Simplot. Second, the court determined that as a matter of law, future lost wages are unavailable under both causes of action.

As to the breach of employment contract claim, the court was of the opinion that such damages are too inherently speculative where the employment contract is for an indefinite term. The court also found that as a matter of law, future lost wages was not authorized by statute for violations of the Idaho Human Rights Act.

The trial court also granted a new trial to defendants on the claim for breach of contract to reinstate, holding that the jury's determination of liability and assessment of damages were both against the clear weight of the evidence, on the ground that O'Dell caused the breach by failing to accept alternative employment offered by Simplot. In addition, the court held that front pay is too speculative as a matter of law to be allowed as an element of damages, and that in any event the evidence supporting the award of future damages was too speculative to support the verdict.

### A. FRONT PAY UNDER IDAHO HUMAN RIGHTS ACT.

In a case of first impression, we hold that front pay is a permissible element of damages under the Idaho Human Rights Act. In making this determination, we refer first to the language of the statute itself. Idaho Code § 67–5908(3), in listing the remedies available for violations of the Idaho Human Rights Act, provides that:

[I]f the court finds that unlawful discrimination has occurred, its judgment shall specify an appropriate remedy or remedies therefor. Such remedies may include, but are not limited to:

\* \* \* \* \* \*

(c) An order for actual damages including lost wages and benefits, provided that such back pay liability shall not accrue from a date more than two (2) years prior to the filing of the complaint....

Respondents claim that the phrase "such back pay," which refers back to the lost wages recoverable under the statute, limits the term "lost wages" to back pay exclusively, and that if the legislature had intended to include front pay it would have been expressly mentioned as an available remedy.

Both back pay and front pay are subsets of the global term, "lost wages." The words "lost wages" do not differentiate between wages lost before or after trial. This is illustrated by the fact that lost wages are to be awarded as an element of "actual damages," which are commonly understood as those actual losses caused by the conduct at issue. In other words, the purpose of the lost wages element of damages is to restore to the plaintiff all of the benefits lost as a result of the violation of the Idaho Human Rights Act. There is no distinction drawn in the statute between actual damages suffered before the case reaches a courtroom from those arising after trial.

The words "such back pay" are included only as a limitation of the amount of back pay that may be awarded when compensating a plaintiff for lost wages. It does not limit the entire award of lost wages to back pay alone.

We are guided in our interpretation of the Idaho statute by federal law. The first section of the Idaho Human Rights Act declares that its purpose is to "provide for the execution within the state of the policies embodied in the federal Civil Rights Act of 1964, ... and the Age Discrimination in Employment Act of 1967...." I.C. § 67–5901. This Court has previously determined that the legislative intent reflected in I.C. § 67–5901 allows our state courts to look to federal law for guidance in the interpretation of the state provisions. *Hoppe v. McDonald*, 103 Idaho 33, 644 P.2d 355 (1982); *Bowles v. Keating*, 100 Idaho 808, 606 P.2d 458 (1979).

Front pay is allowed in federal case law under the equal employment provisions of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §§ 2000e through 2000e–17. This result has been reached in most federal circuits despite the fact that the federal statute, like the Idaho statute, does not expressly refer to "front pay." 42 U.S.C. § 2000e–5(g); *Walsdorf v. Board of Comrs.*, 857 F.2d 1047 (5th Cir.1988); *Shore v. Federal Express Corp.*, 777 F.2d 1155 (6th Cir.1985); *Briseno v. Central Technical Community College Area*, 739 F.2d 344 (8th Cir.1984); *Fadhl v. San Francisco*, 741 F.2d 1163 (9th Cir.1984); *Fitzgerald v. Sirloin Stockade, Inc.*, 624 F.2d 945 (10th Cir.1980); *Hill v. Western Elec. Co.*, 596 F.2d 99 (4th Cir.), *cert. denied*, 444 U.S. 929, 100 S.Ct. 271, 62 L.Ed.2d 186 (1979).

Likewise, the Age Discrimination in Employment Act (ADEA), does not expressly refer to front pay, back pay, or lost wages, but front pay is nevertheless allowed. 29 U.S.C. § 626(b); *E.E.O.C. v. Prudential Federal Sav. & Loan Asso.*, 763 F.2d 1166 (10th Cir.), *cert. denied*, 474 U.S. 946, 106 S.Ct. 312, 88 L.Ed.2d 289 (1985); *Maxfield v. Sinclair Int'l*, 766 F.2d 788 (3d Cir.1985), *cert. denied*, 474 U.S. 1057, 106 S.Ct. 796, 88 L.Ed.2d 773 (1986); *Davis v. Combustion Engineering, Inc.*, 742 F.2d 916 (6th Cir.1984); *Cancellier v. Federated Dep't Stores*, 672 F.2d 1312 (9th Cir.), *cert. denied*, 459 U.S. 859, 103 S.Ct. 131, 74 L.Ed.2d 113 (1982).

Respondents have cited certain United States District Court cases which hold that front pay is not available under Title VII and the ADEA. However, as discussed above, our determination is based primarily upon the language of the Idaho statute and guided by federal case law. We acknowledge that several circuits have arrived at a different holding, but even these jurisdic-

tions do not preclude an independent determination by this Court.

Our conclusion on the issue of front pay is bolstered by policy considerations. If damages were measured by the interval between the wrongful conduct and the date of trial, plaintiff's attorneys would have great incentive to procure trial delays in order to increase the amount of compensable damages. In addition, to cut off the measure of damages as of the date of trial would preclude full compensation to people injured by discriminatory practices. The alternative, to allow full compensation to injured plaintiffs for actual losses, is consistent with the terms of the statute and the policy "to make persons whole for injuries suffered on account of unlawful employment discrimination." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975). Although future damages are by their nature somewhat uncertain, "any ambiguity in what the claimant would have received but for discrimination should be resolved against the discriminating employer." *Rasimas v. Michigan Dep't of Mental Health*, 714 F.2d 614 (6th Cir.1983), *cert. denied*, 466 U.S. 950, 104 S.Ct. 2151, 80 L.Ed.2d 537 (1984).

To clarify the scope of front pay as an element of damages, we first note that future lost wages or front pay is an alternative to reinstatement, *Maxfield v. Sinclair Int'l*, 766 F.2d at 796, and may be granted only where reinstatement is made unreasonable by hostility between the parties, *Hoffman v. Nissan Motor Corp.*, 511 F.Supp. 352 (D.N.H.1981), or lack of vacancy in the position *Wangsness v. Watertown School Dist.*, 541 F.Supp. 332 (D.S.D.1982). The amount of future lost wages or front pay to be awarded is a matter to be determined by the trier of fact upon review of the evidence in the record. Relevant considerations include the plaintiff's salary history, scheduled or mandated pay raises, and a finding based on the evidence in the record of the time which it will take the plaintiff to find comparable employment with a commensurate salary, at which time the award of front pay should be discontinued.

BISTLINE, JOHNSON and BOYLE, JJ., concur.

### B. FRONT PAY AS AN ELEMENT OF CONTRACT DAMAGES.

We review the trial court's determination that future lost wages are too speculative as a matter of law to be permitted as an element of contract damages. The fact that contract damages are not capable of exact proof does not preclude their availability as a matter of law. The rule is that the measure of damages is such as will compensate for the loss suffered as the result of a breach of contract. *Beal v. Mars Larsen Ranch Corp.*, 99 Idaho 662, 586 P.2d 1378 (1978); *Nelson v. Hazel*, 91 Idaho 850, 433 P.2d 120 (1967). When considering an award of damages for lost future benefits, the question is whether the plaintiff has proven the damages relating to future losses with reasonable certainty. *Clark v. International Harvester Co.*, 99 Idaho 326, 581 P.2d 784 (1978).

Where a claim is asserted for the recovery of future benefits, the burden of proof is upon the plaintiff to prove with reasonable certainty the amount of the loss caused by the conduct of the defendant. In the context of an employment contract for an indefinite term, a plaintiff might resort to evidence such as employment history to show likelihood of future employment.

Any claim of damages for prospective loss contains some element of uncertainty, but that fact is not fatal to recovery. "[T]he jury may make a just and reasonable estimate of the damage based on relevant data, and render its verdict accordingly.... '[J]uries are allowed to act on probable and inferential as well as [upon] direct and positive proof.'" *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 265, 66 S.Ct. 574, 580, 90 L.Ed. 652 (1946), quoting *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 564, 51 S.Ct. 248, 250–51, 75 L.Ed. 544 (1931). "The most elementary conceptions of justice and public policy require that the wrongdoer

shall bear the risk of the uncertainty which his own wrong has created." *Bigelow*, 327 U.S. at 265, 66 S.Ct. at 580.

■ Thus, we hold that the district court erred in its determination that a breach of an employment contract for an indefinite term precludes the recovery of future lost wages as a matter of law. We reverse the district court's determination that future lost wages are too speculative as a matter of law to be permitted as an element of contract damages.

BAKES, C.J., and BISTLINE, JOHNSON and BOYLE, JJ., concur.

### III.

### BREACH OF CONTRACT TO REINSTATE.

■ The district court granted Simplot a new trial on the issue of future lost wages as damages on the claim for breach of contract to reinstate. The trial court reasoned that future damages were too speculative to be predicted with any certainty and also that O'Dell caused the breach of the contract by rejecting the alternate position at the Food Division.

■ The analysis to be made in reviewing this decision is set out in *Sun Valley Shopping Center, Inc. v. Idaho Power Co.*, 119 Idaho 87, 803 P.2d 993 (1990). In determining whether or not there was an abuse of discretion committed by the trial court, the questions we must ask are:

(1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

119 Idaho at 94, 803 P.2d at 1000.

In its Memorandum Opinion and Order issued on February 5, 1988, the trial court fulfilled the first requirement and correctly perceived the issue as one of discretion by quoting *Blaine v. Byers*, 91 Idaho 665, 429

P.2d 397 (1967), for the proposition that a motion to grant a new trial is within the sound discretion of the trial court.

■ The next step in the process is to determine whether the trial court abused its discretion in granting a new trial as to liability for the breach of contract to reinstate. To determine whether the trial court abused its discretion, we must ascertain whether the trial judge has given "due consideration to the facts and circumstances of the case, and correctly applied the law thereto." *Quick v. Crane*, 111 Idaho 759, 772, 727 P.2d 1187, 1200 (1986).

As we have stated earlier, future lost wages as damages are not too speculative so as to deny recovery. Using the proper guidelines, future lost wages are an integral part of an ex-employee's damages for retaliatory discharge. It was error for the trial court to grant a new trial as to liability based upon its determination that future lost wages were not available as an element of contract damages.

■ Next we review the trial court's determination that O'Dell's conduct prevented him from being reinstated to his position at the Land and Livestock Division. The burden of proving the existence of a contract and the fact of its breach is upon the plaintiff. *Johnson v. Albert*, 67 Idaho 44, 170 P.2d 403 (1946). Once those facts are established, the defendant has the burden of pleading and proving affirmative defenses which legally excuse performance of the contract. *Pace v. Hymas*, 111 Idaho 581, 726 P.2d 693 (1986); *Harman v. Northwestern Mut. Life Ins. Co.*, 91 Idaho 719, 429 P.2d 849 (1967); *Paurley v. Harris*, 77 Idaho 336, 292 P.2d 765 (1956). According to the jury's verdict, this defense was not proven. The trial court differed in its interpretation of the evidence, and found, by the clear weight of the evidence, that O'Dell's alleged feelings were adequate justification for a breach of contract by Simplot. In this determination, the trial court abused its discretion.

A review of the record does not disclose *any* evidence which would have made the performance of the contract so unworkable

as to justify its breach. There was some testimony in the record that O'Dell did not admire Basabe and others with whom he had worked. However, that fact does not support the assertion that O'Dell's own conduct was the cause of Simplot's alleged inability to reinstate him to the Land and Livestock Division.

O'Dell's feelings concerning some of the Simplot employees in the Land and Livestock Division were the result of various incidents during his tenure there. After Wilda Seibel utilized O'Dell's assistance in pursuing a grievance against Basabe, O'Dell testified that relationships in the office changed. He felt he was repeatedly asked in one-on-one interviews with Basabe to protect the company's interests before those of Seibel. At one point Basabe informed him that he had hired a private investigator to investigate Seibel, which fact O'Dell reported to Steve Beebe, Simplot's corporate counsel. O'Dell also reported to Beebe that Ron Parks, Division Purchasing Manager, was attempting to secure a photograph of Seibel.

O'Dell testified that until that time his relationship with Basabe had been good, but that abruptly, approximately two months before his discharge, Basabe's attitude toward him changed. It was about this time that he was informed by Beebe that Basabe had become aware of the fact that O'Dell was reporting follow up information on the Seibel incident to the corporate office. Beebe warned O'Dell that there was likely to be strain in the relations between himself and Basabe, and O'Dell testified that the atmosphere in the office changed for the worse. Various proposals submitted for Basabe's review were routinely disapproved. Basabe's secretary testified to keeping records of O'Dell's incoming phone calls and meetings relating to the Seibel matter and his military career on her own initiative, and reporting the results to Basabe. According to a transcript of the tape recorded conversation made when O'Dell was fired, O'Dell's longstanding career in the National Guard was threatened by Tom Basabe. Following his termination he heard accusations from corporate personnel that he was intimate with Wilda Seibel, and that he had been disloyal to Basabe and the company. After being fired, he testified that he was "stonewalled" by Gary Wallis, who was reviewing his grievance, and felt that he could not get any information from the company about developments in his case.

These types of incidents naturally created some ill feelings on O'Dell's part. Yet O'Dell testified that he had weathered such a situation several years earlier, when there was a prior conflict between Basabe's conduct and company policy. He testified that he pursued grievance procedures in an attempt to get his job back because he liked his job and liked the company.

When called upon to give deposition testimony in the case pursued by Wilda Seibel, O'Dell recounted the feelings he retained as a result of these incidents leading to his termination. However, during the trial of his own case O'Dell related those statements to specific incidents, and stated that they were not broad and irrevocable attitudes. Despite defense counsel's efforts on cross-examination to characterize those responses as evidence of a vitriolic hatred on O'Dell's part against most of the managers of the Land and Livestock Division, O'Dell repeatedly qualified those statements, testifying that they were made in relation to specific incidents, and that those relationships would heal with time.

The record does not contain any evidence of conduct on O'Dell's part which suffices to justify Simplot's breach of contract. O'Dell's feelings were the result of the conduct of others within the Division, and not due to any fault of his own.

We hold that the court's ruling did amount to a manifest abuse of discretion. Although an appellate court may not be in a position to "weigh" evidence in reviewing a trial court's decisions, *Quick v. Crane*, 111 Idaho at 770, 727 P.2d at 1198, if appellate review is to mean anything at all, this Court must have the power to review the record, as we have done, and evaluate whether the trial court's decisions are supported by the record. In this case, the trial court's decision did not have the support of

a factual basis, and therefore we hold that the grant of new trial on this issue was a manifest abuse of discretion. Accordingly, we reverse the grant of a new trial to defendants on the issue of liability for breach of the contract to reinstate.

Because we reach this conclusion on the second element of the *Sun Valley* analysis, there is no need for further inquiry into the third element. Thus, we will not delve into the issue of whether the trial court reached its decision by an exercise of reason.

BISTLINE, JOHNSON and BOYLE, JJ., concur.

## IV.

### DAMAGES.

Next, we review the decision of the trial court granting a new trial on the question of damages in the form of future lost wages for the breach of employment contract, breach of contract for reinstatement, punitive damages, and violations of the Idaho Human Rights Act. We must determine whether "the trial court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it." *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

■ Having already determined that future lost wages or front pay is a proper element of O'Dell's damages, we turn our attention to the trial court's grant of a new trial on the issue of damages suffered by O'Dell. The trial court found that the determination of future lost wages was too speculative to support the verdict. Although we find that this finding of the trial court was error, we affirm the grant of a new trial on the issue of damages.

The trial court found the $375,000 for future loss of wages under the breach of employment contract and the breach of contract to reinstate claims to be contrary to the clear weight of the evidence and too speculative in nature to be the basis for the verdict rendered. This determination by the trial court is within the outer boundaries of its discretion and permitted by

I.R.C.P. 59(a)(6). We further note that the trial court was without the benefit of this Court's holding that future lost wages or front pay is permitted for the breach of employment contract and for the breach of contract to reinstate when it held such loss of future wages to be too speculative in nature. We affirm the trial court's grant of a new trial on the issue of future loss of wages for breach of employment contract and breach of contract to reinstate.

■ Next, we review the award of $35,-000 for past economic loss (past lost wages). This portion of the jury verdict was left undisturbed by the trial judge. We hold that there was sufficient evidence to support this award, therefore, we affirm the jury's award as to past lost wages.

■ Next, we review the trial court's grant of remittitur of punitive damages. In granting remittitur or in the alternative, a new trial, trial court stated:

15b. In the court's view a punitive damage award of $5,000 would be justified. Nevertheless, the court will not grant the motions for judgment notwithstanding the verdict and substitute $5,000 for the $1,000,000 awarded by the jury, since there was evidence on which to base a larger award. However, in the court's view, the clear weight of the evidence indicates that only the $5,000 was justified. Therefore, a new trial is granted to determine the amount of punitive damages flowing from the initial breach of employment contract.

This reasoning is an insufficient basis to support either remittitur or the grant of a new trial. We remand to the trial court for further clarification of its reasoning for granting remittitur and new trial. In granting remittitur or in the alternative new trial, the trial court did not make the necessary analysis as required by I.R.C.P. 59(a)(5). On remand, the trial court must state with specificity its reasoning in conformance with the standards that we have set forth in *Dinneen v. Finch* and *Quick v. Crane*. Without these specific findings, we are unable to determine whether the

trial court abused its discretion on the issue of punitive damages.

■ The jury awarded three (3) $1,000 punitive damage awards pursuant to the Idaho Human Rights Act, one award against Basabe and two awards against Simplot. The trial court held that the award against Basabe was supported by the evidence and that one (1) award against Simplot was warranted as there was sufficient evidence that Mr. Basabe, acting on behalf of the Simplot Company, willfully violated the Act in his retaliatory discharge of O'Dell, but granted a new trial as to whether there was a second violation by Simplot's. We find the trial court did not abuse its discretion and that it reached this decision by an exercise of reason. Accordingly, we affirm the trial court's determination that the two $1,000 punitive damage awards were warranted and the grant of a new trial as to a possible second violation by Simplot.

BAKES, C.J., and BOYLE, JJ., concur.

JOHNSON, J., concurs and dissents.

BISTLINE, J., dissents.

### V.

### FAILURE TO MITIGATE AS GROUNDS FOR NEW TRIAL.

The trial court granted Simplot's motion for new trial on the breach of employment contract, and retaliatory discharge claims as to the issue of damages only. The court reasoned that the jury's award was against the clear weight of the evidence because O'Dell had failed to mitigate his damages by refusing to accept the position as Risk Manager of the Food Division offered by Simplot as an alternative to its original offer to reinstate O'Dell unconditionally to his former position.

■ A plaintiff asserting wrongful discharge is not required to mitigate damages by accepting an alternative position which requires the employee to relinquish claims arising from the employer's breach. *Teradyne, Inc. v. Teledyne Indus. Inc.*, 676 F.2d 865 (1st Cir.1982); *Redman v. Department of Educ.*, 519 P.2d 760 (Alaska 1974); *Stanspec Corp. v. Jelco, Inc.*, 464 F.2d 1184 (10th Cir.1972); *Billetter v. Posell*, 94 Cal.App.2d 858, 211 P.2d 621 (1949); *Farmers' Co-operative Ass'n v. Shaw*, 171 Okla. 358, 42 P.2d 887 (1935). Although Simplot's final offer of the Food Division position was not explicitly contingent on a release of claims by O'Dell, by accepting the alternative position O'Dell would in fact be relinquishing the right of reinstatement to his former position which he claimed pursuant to the violation of the Idaho Human Rights Act by Simplot.

■ Further, although a plaintiff claiming breach of an employment contract is required to mitigate damages, *Anderson v. Gailey*, 100 Idaho 796, 606 P.2d 90 (1980), mitigation does not require a party to a contract to enter into a new contract proffered as an alternative by the breaching party where there is a finding that bad faith surrounds the breach of the original contract. *Peck Iron & Metal Co. v. United States*, 603 F.2d 171, 221 Ct.Cl. 37 (1979); *Food Handlers Local 425 v. Valmac Industries, Inc.*, 528 F.2d 217 (8th Cir.1975). Where there is no finding of bad faith, the issue becomes the reasonableness of the non-breaching party's efforts to mitigate losses caused by the breach. *Davis v. First Interstate Bank of Idaho, N.A.*, 115 Idaho 169, 765 P.2d 680 (1988); *Casey v. Nampa & Meridian Irrig. Dist.*, 85 Idaho 299, 379 P.2d 409 (1963).

■ In this case, having considered the issues of bad faith and reasonableness, the jury found that the conduct surrounding the breach of the employment contract involved a violation by Simplot of the provisions of the Idaho Human Rights Act, and imposed punitive damages against Simplot for willful violations of that Act. Under these circumstances a bad faith breach was established, and O'Dell was not bound to mitigate damages by accepting employment from Simplot other than the position to which he pursued a legal right of reinstatement.

We do not intend our holding today to be construed as eliminating the requirement for an employee claiming a breach of employment contract to mitigate their damages by trying to obtain employment elsewhere. We hold that under these circumstances, O'Dell was not required to accept the position in the Food Division offered by Simplot. O'Dell's rejection of the Simplot's offer to work in the Food Division cannot be used to establish his failure to mitigate.

■ The jury was instructed that in order to find for O'Dell on the breach of employment contract claim, it would have to find that he was constructively discharged. The trial court correctly instructed that an employee who resigns is not entitled to recover for wrongful termination of employment absent proof of circumstances establishing constructive discharge. *Ford v. Alfaro*, 785 F.2d 835 (9th Cir.1986); *Satterwhite v. Smith*, 744 F.2d 1380 (9th Cir.1984); *Knee v. School Dist.*, 106 Idaho 152, 676 P.2d 727 (Ct.App.), *rev. denied* (1984); *Young v. Southwestern Sav. & Loan Assoc.*, 509 F.2d 140 (5th Cir.1975).

In finding that Simplot was liable on the claim for breach of employment contract (a finding that was explicitly affirmed by the trial court in its order granting a new trial on the issue of damages), the jury necessarily found that the circumstances surrounding the withdrawal of the offer for unconditional reinstatement to O'Dell's former position and the offer of the Food Division position constituted constructive discharge, defined as "harassment, intimidation, coercion, or other aggravating conduct that renders working conditions intolerable" and that "a reasonable person would terminate the relationship under similar circumstances." Instruction number 24. The issue is whether this finding by the jury is contrary to the clear weight of the evidence.

In its motion for new trial, defendant Simplot argued that the evidence was insufficient to support the jury's finding of liability for the breach of the employment contract, which was based on constructive discharge. The trial court responded by explicitly holding the jury's verdict of liability on that issue was not against the weight of the evidence. In order to reach this conclusion, the trial court implicitly accepted the jury's finding that O'Dell was justified in considering himself constructively discharged after Simplot rescinded its offer of unconditional reinstatement and offered the Food Division position as an alternative.

The trial court's acceptance of the jury's conclusion that Simplot was liable for breach of the employment contract based on constructive discharge is not consistent with its conclusion that O'Dell's refusal of the alternative position offered by Simplot constituted a failure to mitigate his damages. Therefore, we reverse the grant of a new trial on the issue of damages based on a claim of breach of employment contract. We hold that O'Dell was not required to accept the alternate position in the Food Division offered by Simplot.

JOHNSON and BOYLE, JJ., concur.

BISTLINE, J., concurs and specially concurs.

## VI. OTHER ISSUES.

O'Dell assigns error to the district court's refusal to give plaintiffs' requested instructions numbers 49 through 51 and 53 through 55. These proposed instructions dealt with wrongful discharge in breach of public policy, which is an exception to the employment at will doctrine. *MacNeil v. Minidoka Mem. Hosp.*, 108 Idaho 588, 701 P.2d 208 (1985). The trial judge marked instructions numbers 49 through 51 and 55 as "covered;" instructions numbers 53 through 54 were marked "refused." The trial court's instruction number 23 instructed the jury that breach of public policy is an exception to the at will employment doctrine. Instructions numbers 37 and 38 further defined what constituted a breach of public policy. Thus, the trial court correctly instructed the jury as to this issue; there is no error.

■ O'Dell assigns error to the district court's grant of summary judgment in fa-

vor of the defendants on O'Dell's claim for breach of the covenant of good faith and fair dealing. At the time of the summary judgment, this claim was not recognized in Idaho in wrongful discharge cases. Our decision in *Metcalf v. Intermountain Gas Co.*, 116 Idaho 622, 778 P.2d 744 (1989), recognized this cause of action. *Sorensen v. Comm Tek, Inc.*, 118 Idaho 664, 799 P.2d 70 (1990), applied the *Metcalf* ruling retroactively to all cases pending at the time *Metcalf* was decided on August 8, 1989. O'Dell filed his appeal on May 20, 1988, therefore this issue was pending as of the date of the *Metcalf* ruling, consequently, we vacate the grant of summary judgment in favor of the defendants and remand for proceedings consistent with *Metcalf* and *Sorensen.*

■■■■ O'Dell assigns error to the denial of his motion to amend his complaint to conform to the evidence by adding a tort claim for intentional interference with contract by Basabe. This motion was made at the close of the trial during the jury instruction conference. The trial judge denied the motion. A motion to amend a pleading is within the discretion of the trial court. *Obray v. Mitchell*, 98 Idaho 533, 567 P.2d 1284 (1977); I.R.C.P. 15(b). In ruling on the motion, the trial judge stated that in his opinion, Basabe had not been given sufficient notice to properly respond to the claim and that the trial court was given inadequate time to determine the merit of the claim. This reasoning is a sufficient basis to uphold the decision of the trial judge. There is no abuse of discretion.

We have reviewed all other assignments of error raised by all parties and find them to be without merit.

BAKES, C.J., and BISTLINE, JOHNSON and BOYLE, JJ., concur.

## CONCLUSION

To summarize, for the reasons previously stated, we hold that the trial court adequately stated its reasons for the grant of a new trial on the various issues raised by the defendants with the exception of the new trial as to punitive damages. We remand the remittitur and the alternative grant of a new trial on the issue of punitive damages based on the breach of employment contract and the breach of the contract to reinstate for more specific findings consistent with *Dinneen v. Finch* and *Quick v. Crane.*

We hold that future lost wages is an element of damages for causes of action based upon breach of employment contract, breach of contract to reinstate, and for violation of the Idaho Human Rights Act. We reverse the grant of a new trial on the issues of liability on the claims for breach of the employment contract, breach of contract of reinstatement, and for the violation of the Idaho Human Rights Act. We further hold that O'Dell, under the particular circumstances of this controversy, was not under any obligation to accept Simplot's offer of employment in the Food Division. This does not change our general rule requiring mitigation of damages. We reverse the grant of a new trial on the issue of damages on the claims of breach of employment contract and retaliatory discharge. We affirm the grant of a new trial as to the claims of a second violation of the Idaho Human Rights Act by Simplot and on damages for future lost wages on the claims of breach of employment contract and breach of contract to reinstate. We affirm the award of $35,000 for past economic loss. We vacate the summary judgment in favor of the defendants on the issue of breach of covenant of good faith and fair dealing, and remand for proceedings consistent with *Metcalf v. Intermountain Gas Co.* and *Sorensen v. Comm Tek, Inc.*. We affirm the trial court's denial of O'Dell's motion to amend his complaint to conform to the evidence.

Costs to appellant O'Dell.

BOYLE, Justice, concurring and concurring specially:

I concur in the majority opinion, and feel it necessary to briefly comment on the respective functions of I.R.C.P. 59(a)(5) and 59(a)(6) when considering motions for new trial.

Although a lengthy treatise could be written on this topic, and the volumes of cases cited in the majority opinion could be further discussed and analyzed, it is clear that Rule 59(a)(5) has limited application to those cases where a motion for new trial is sought solely on the basis of excessive or inadequate damages appearing to have been given or awarded under the influence of passion or prejudice.

However, in my view, Rule 59(a)(6) is not so limited in either scope or application. Rather, it applies in a wide variety of circumstances where the evidence was insufficient to justify the verdict, or that the verdict is against the law. The component parts of a verdict, depending on the legal theory advanced, involve several elements and to restrict the trial courts from considering excessive or inadequate damages under Rule 59(a)(6) while considering whether the other portions of the verdict are supported by the evidence is inconsistent with our case law and could result in situations where a motion for new trial did not fit within either subsection. In my opinion, subsection (6) is an all encompassing provision of Rule 59(a) and allows the trial courts that necessary degree of latitude when considering the complex issues frequently raised in motions for new trial.

BAKES, Chief Justice, concurring.

I concur in Justice Boyle's analysis of the interplay between I.R.C.P. 59(a)(5) and 59(a)(6). In my view the application of that analysis should result in affirming the trial court's granting of the motion for new trial in this case, as described in my special concurring and dissenting opinion.

BAKES, Chief Justice, concurring and dissenting:

I concur in all but Parts II(A), III, and V of the Court's opinion, from which I dissent.

A.

The Court errs in Part III when it overturns portions of the trial court's order granting a new trial. The issue for this Court on appeal is whether the trial court manifestly abused its discretion in finding that the jury's verdict was against the clear weight of the evidence. The majority concludes that certain portions of the trial court's holding did amount to a manifest abuse of discretion. The majority correctly recognizes that the issue for this Court is whether the trial court has abused its discretion. However, the majority essentially renders its own interpretation of the facts and of the witnesses' credibility, rather than deferring to the trial court's evaluation.

Our cases have consistently held that the trial court has broad discretion in determining whether to grant or deny a new trial and its decision is entitled to great deference. As we stated in *Ryals v. Broadbent Development Co.*, 98 Idaho 392, 565 P.2d 982 (1977), "The trial judge is possessed of extremely broad discretion in acting as a 'thirteenth juror' who is entitled to override the verdict if he conceives that justice has not been done." 98 Idaho at 394, 565 P.2d at 984. In *Sanchez v. Galey*, 112 Idaho 609, 733 P.2d 1234 (1986), we provided trial courts with the following guidance when ruling on a motion for new trial pursuant to Rule 59(a)(6), Idaho Rules of Civil Procedure.

> [T]he trial court is to weigh the evidence to determine if the jury's verdict is supportable by the evidence and when it thinks not, it should grant a new trial pursuant to I.R.C.P. 59(a)(6).

112 Idaho at 615, 733 P.2d at 1240. In *Quick v. Crane*, 111 Idaho 759, 766, 727 P.2d 1187 (1986), we stated that in weighing all the evidence the trial judge should make "his own determination of the credibility of the witnesses."

Here, the trial court, after weighing the evidence and making his own evaluation of the witnesses' credibility, concluded that the jury's verdict was against the clear weight of the evidence. Having made that evaluation, the trial court followed the directive of our decision in *Sanchez v. Galey* that "it [the trial court] should grant a new trial pursuant to I.R.C.P. 59(a)(6)" when it determines that the jury's verdict is against the weight of the evidence. The

trial court here did exactly what our *Sanchez v. Galey* decision directed that it should do. The trial court should be affirmed.

In contrast to the function of the trial court in ruling on motions for new trial, our task on appeal is much more circumscribed. As we stated in *Quick v. Crane*, 111 Idaho 759, 727 P.2d 1187 (1986), "Appellate review is necessarily more limited. While we must review the evidence, we are not in a position to 'weigh' it as the trial court can." 111 Idaho at 770, 727 P.2d at 1198. The rationale behind the rule is plain. As we explained in *Quick v. Crane*, "The trial judge is sitting at the heart of our trial process, a position we on the appellate level cannot duplicate." 111 Idaho at 767, 727 P.2d at 1195. Thus, we concluded in *Quick v. Crane* that, "The trial court is in a far better position to weigh the demeanor, credibility, and testimony of witnesses, and the persuasiveness of all the evidence." 111 Idaho at 770, 727 P.2d at 1198.

The foregoing cases leave no doubt concerning the distribution of power between trial courts and appellate courts when considering new trial motions and orders. The trial court is required to independently review and *weigh the evidence* and judge the credibility of witnesses; we may not. The trial court, by virtue of its position in the heart of the trial process, is in the best position to judge the weight of the evidence and to evaluate the demeanor and credibility of witnesses; we, by virtue of our remote position, are not. Thus our prior cases have consistently held that the trial court decision is accorded great deference and will not be overturned absent a manifest abuse of discretion. *Sanchez v. Galey, supra; Quick v. Crane, supra.*

Furthermore, our prior cases have outlined the analysis which appellate courts must make in determining whether the trial court has abused its discretion in granting or denying a motion for new trial. In *Sun Valley Shopping Center, Inc. v. Idaho Power Co.*, 119 Idaho 87, 803 P.2d 993 (1990) (petition for rehearing denied), we set out that analysis as follows: (1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason. As we spelled out in *Sun Valley*, our task is to focus on the process the trial court used in reaching its decision, not to duplicate the trial court's function to see if we come up with the same result. Otherwise, we are engaging in what the Court in *Quick v. Crane* described as "result-oriented appellate review of such discretion." 111 Idaho at 773, 727 P.2d at 1201.

In ruling on the motion for new trial, the trial court followed the directives of this Court and "weigh[ed] the evidence to determine if the jury's verdict is supportable by the evidence....," and because he did not think so, he granted a new trial as this Court directed in *Sanchez v. Galey*, 112 Idaho 609, 615, 733 P.2d 1234, 1240 (1986). The trial court based that determination upon his evaluation of the evidence which to him demonstrated that O'Dell harbored such animosity toward the personnel of the Land & Livestock Division that "Mr. O'Dell's actions made it unworkable for him to return to the Land & Livestock Division...." Based upon the trial court's own evaluation of the evidence, he concluded that, as a result of O'Dell's hostility, he "caused his own future damage by making return to the Land & Livestock Division unworkable," and therefore the trial court granted a new trial on the issue of liability and damages for loss of future wages. While the Court's opinion affirms the grant of a new trial with regard to damages for loss of future wages, it reverses the trial court's grant of a new trial on the issue of liability for loss of future wages. However, there was evidence that O'Dell retained feelings of hostility toward the management of the Land & Livestock Division and had doubts about the integrity of Basabe and others with whom he had worked. The Court's opinion nevertheless concludes that, "O'Dell repeatedly qualified those statements, testifying that they were

made in relation to specific incidents, and that those relationships would heal with time." *Ante* at 814, 810 P.2d at 1100. By unqualifiedly accepting O'Dell's opinion that things would work out, and "that those relationships would heal with time," this Court is making its own determination of the credibility of O'Dell's testimony, directly contrary to the credibility determination made by the trial court. By so doing, this Court has abandoned the abuse of discretion analysis which this Court said in the *Sun Valley Shopping Center* case that we should apply. It has supplanted the trial court's credibility determination with its own. In doing so the Court errs.

An examination of pertinent parts of the majority opinion points out clearly how the Court is substituting its view on the credibility and weight of the evidence for that of the trial court. The majority states that, "A review of the record does not disclose *any* evidence which would have made the performance of the contract so unworkable as to justify its breach." *Ante* at 814, 810 P.2d at 1100. However, there was abundant evidence to support the trial court's finding, in granting the new trial, that it was O'Dell's conduct which made continued employment with the Land & Livestock Division unworkable. For example, in his deposition taken in the Seibel case, O'Dell was highly critical of and bitter toward management personnel with whom he necessarily would have had a close association had he returned to the Land & Livestock Division. In addition, O'Dell's testimony demonstrated an animosity toward Gary Wallace, the company's corporate human resources officer. Moreover, there was the fact that, even after being offered reinstatement, O'Dell filed a claim with the Human Rights Commission, which Simplot testified was a factor in their decision to withdraw the offer of reinstatement. The filing of that claim would merely add to what would otherwise be a highly volatile situation had O'Dell resumed his activities in the Land & Livestock Division. These are, among other reasons, the primary factors that motivated the trial court, in evaluating the evidence, to grant a new trial.

For the majority to say that there wasn't any evidence that "would have made the contract so unworkable as to justify its breach," and thus reverse the trial court's contrary finding, the majority, of necessity, had to weigh the evidence. The majority accepts O'Dell's testimony that he would have gone back to Land & Livestock and that he, O'Dell, felt he could overcome his feelings of animosity and "weather" the situation. By focusing on O'Dell's testimony, as the majority does, and comparing that with the reasons for not reinstating O'Dell to the Land & Livestock Division, it is obvious that the majority is weighing the evidence and supplanting its evaluation of the evidence for that of the trial court.

> The majority states:
> However, during the trial of his own case he [O'Dell] related those statements to specific incidents, and state[d] that they were not broad and irrevocable attitudes. Despite defense counsel's efforts on cross examination to characterize those responses as evidence of a vitriolic hatred on O'Dell's part against most of the managers of the Land & Livestock Division, O'Dell repeatedly qualified those statements, testifying that they were made in relation to specific incidents, and that those relationships would heal with time.

*Ante* at 814, 810 P.2d at 1100. This excerpt demonstrates that the majority is accepting and relying on O'Dell's opinion "that those relationships would heal with time." However, the trial court, after independently reviewing and weighing all the evidence and the credibility of the witnesses, did not give credence to O'Dell's protestations that his feelings of hostility toward the management of the Land & Livestock Division could be overcome and that he could "weather" the situation. The credibility determination was the trial court's call, not this Court's. As we have repeatedly emphasized:

> The trial judge [is] in a position to see and hear the witnesses speak. He could observe their demeanor on the witness stand, and consequently [is] in a better position to judge their credibility and to

weigh their testimony than is this Court. . . .

*Rosenberg v. Toetly,* 93 Idaho 135, 138–139, 456 P.2d 779, 782–783 (1969). *Accord, Mendenhall v. MacGregor Triangle Co.,* 83 Idaho 145, 358 P.2d 860 (1961); *Blaine v. Byers,* 91 Idaho 665, 429 P.2d 397 (1967); *Dinneen v. Finch,* 100 Idaho 620, 603 P.2d 575 (1979); *Quick v. Crane, supra.*

The majority, in an attempt to discredit the trial court's evaluation, looks at O'Dell's testimony, evaluates that testimony, weighs that testimony and determines on its own that O'Dell's feelings were really not that hostile and that the situation could have been workable. The majority has supplanted its evaluation of O'Dell's testimony for that of the trial court.

At the outset of Part III, the majority acknowledges that appellate courts "may not weigh the evidence," but then qualifies the acknowledgment by stating, "If appellate review is to mean anything at all, this Court must have the power to review the record and evaluate whether the trial court's decisions are supported to any extent by the record." *Ante* at 814, 810 P.2d at 1100. The majority's avowed concerns about the "meaningfulness" of appellate review is, in actuality, either a manifestation of its dissatisfaction with the present distribution of power between appellate courts *vis-a-vis* trial courts, or a dissatisfaction with the result of the trial court's decision to grant a new trial. If appellate courts are going to engage in the type of evidentiary comparisons and witness credibility evaluations as the majority does today, then it is the trial court's function in evaluating a new trial motion that will have become meaningless.

### B.

In Part V of its opinion, the majority reverses that part of the trial court's rationale in granting the new trial on the issue of O'Dell's duty to mitigate damages. The majority reasons that "although a plaintiff claiming breach of a contract of employment is required to mitigate damages, . . . mitigation does not require a party to a contract to enter into a new contract proffered as an alternative by the breaching party where there is a finding that bad faith surrounds the breach of the original contract." *Ante* at 816, 810 P.2d at 1102. Several points deserve mention with respect to this "bad faith" exception to the requirement to mitigate damages.

First, the cases cited by the majority do not support its position. The majority cites two federal cases, claiming that they stand for the "bad faith" proposition: *Food Handler's Local 425 v. Valmac Indus.,* 528 F.2d 217 (8th Cir.1975), and *Peck Iron & Metal Co. v. United States,* 603 F.2d 171, 221 Ct.Cl. 37 (1979). However, a close reading of those cases reveals no general rule regarding a bad faith exception to mitigate, as the majority represents. In each case, the court found that the plaintiff had not failed to mitigate damages under the specific facts and circumstances of the case. In each case, the defendants had exhibited sharp practice, chicanery, and deception, and in one case the conduct was described as "bad faith." But the holding of those cases is that the plaintiff did not fail to mitigate, not that there is a generally recognized bad faith exception to the duty to mitigate. Significantly, neither federal case even takes place in the context of wrongful termination in the employment setting and are thus even less persuasive.

Following the citation to the federal cases, the majority states that, "Where there is no finding of bad faith, the issue becomes the reasonableness of the non-breaching party's efforts to mitigate losses caused by the breach." *Ante* at 816, 810 P.2d at 1102. This statement is followed by a citation to two Idaho cases, *Casey v. Nampa & Meridian Irrigation Dist.,* 85 Idaho 299, 379 P.2d 409 (1963), and *Davis v. First Interstate Bank of Idaho, N.A.,* 115 Idaho 169, 765 P.2d 680 (1988). Those cases, however, do not as the majority implies, hold that "where there is no bad faith, the issue is one of reasonableness." Those cases do discuss the general doctrine of mitigation, but say nothing about bad faith whatsoever. Thus, no Idaho case has adopted or even recognized a bad faith exception to the duty to mitigate.

The court goes on to state: "Having considered the issues of bad faith and reasonableness, the jury found that the conduct surrounding the breach of the employment contract involved a violation by Simplot ..." and "imposed punitive damages against Simplot for willful violations ..." of the Human Rights Act, and concludes that, "Under these circumstances *a bad faith breach was established*...." *Ante* at 816, 810 P.2d at 1102 (emphasis added). In effect, this Court has made its own finding of fact on appeal that the defendant was guilty of "bad faith" and therefore the plaintiff was not obligated to mitigate his damages.

Aside from the fact that there is no authority to support such a "bad faith" exception to the duty-to-mitigate rule, as noted above, there are several procedural problems with such a holding. First, if that is the law, the jury should have been instructed on such a bad faith exception, and the instruction should have defined what is "bad faith." The failure to give such an instruction would itself be grounds for reversing for a new trial. *Robertson v. Richards*, 115 Idaho 628, 769 P.2d 505 (1989) (failure of the trial court to instruct the jury on the definition of proximate cause required the setting aside of the jury's verdict and granting a new trial).

Secondly, if there is such a bad faith exception to the rule that the plaintiff must mitigate his damages, it would be for the trial court, ruling on a motion for new trial, to make such a review of a jury's finding on bad faith, not this Court on appeal. Again, repeating what we said in *Quick v. Crane, supra,* because it bears repeating:

> The trial court is in a far better position to weigh the demeanor, credibility and testimony of witnesses and the persuasiveness of the evidence. Appellate review is necessarily more limited. While we must review the evidence we are not in a position to 'weigh' it as a trial court can.

111 Idaho at 770, 727 P.2d at 1198.

The trial court in this case "weighed" the evidence and concluded that a new trial should be granted in this case because, in his view, the evidence as he viewed and weighed it, did not support the jury's verdict on the mitigation of damages issue. For this Court to make an after the fact rule that "bad faith" precludes the duty to mitigate, and then make an appellate finding of fact that "bad faith" existed because the jury imposed punitive damages against Simplot, violates all known standards of appellate review. If there is such a "bad faith" exception to the duty to mitigate, then there was error at trial in failing to instruct the jury on that issue which would require the judgment to be reversed and the cause remanded for a new trial to a jury properly instructed on this new found bad faith exception to the duty-to-mitigate rule. *Robertson v. Richards, supra.* I believe this Court commits serious error when it adopts such a bad faith rule after the fact, and then makes its own appellate finding of fact that Simplot was guilty of "bad faith." We are an appellate court, not a jury or a trial court. I believe the majority has lost track of that distinction.

Additionally, in Part V, the majority refers to the jury's finding of "constructive discharge" and states that "the issue is whether this finding by the jury is contrary to the clear weight of the evidence." *Ante* at 817, 810 P.2d at 1103. However, the issue before us is not whether the jury's findings are against the clear weight of the evidence; that was the issue before the trial court, and he made the decision that it was. On appeal, our task is limited to determining whether the trial court abused its discretion when, after weighing the evidence and the credibility of witnesses, it found that the jury's verdict was against the clear weight of the evidence. The two standards are dramatically different: the trial judge is at the heart of the process; he has observed the demeanor of the witnesses and judged their credibility; he must weigh the evidence, we may not; his holdings are supposed to be given great deference. *Quick v. Crane, supra.* I believe the trial court's evaluation has not been given that deference. For a graphic comparison of this Court's previous action in deferring to a trial court's ruling on a

new trial motion, see *Black v. Reynolds*, 109 Idaho 277, 707 P.2d 388 (1985).

Finally, if the trial court committed any legal error in ruling on the motions for new trial, the appropriate action for this Court to take would be to point out the correct law and remand those issues to the trial court to make new findings based upon the proper law, as the Court does on the issue of punitive damages. *Heitz v. Carroll*, 117 Idaho 373, 788 P.2d 188 (1990).

### C.

In Part II(A), the majority holds that front pay is a permissible element of damages under the Idaho Human Rights Act. In making that determination, the majority relies primarily upon (1) the language of the statute, (2) upon "guidance" found in federal case law interpreting the Civil Rights and Age Discrimination Acts and, (3) the policy argument that front pay effectuates the goal of fully compensating injured plaintiffs.

In terms of the policy argument, I would readily agree that as a general matter, full compensation of those victimized by discrimination is a desired goal. However, general policy considerations must always yield in the face of statutory language to the contrary. In my opinion, the Idaho Human Rights Act does not by its terms allow for recovery of front pay, and for good reasons described below.

I.C. § 67–5908(3), is the crucial provision at issue. That section states in pertinent part: "An order for actual damages including lost wages and benefits, provided that *such back pay* liability shall not accrue from a date more than two (2) years prior to the filing of the complaint...." (Emphasis added.) The majority explains that the phrase "such back pay," is included only as a "limitation of the amount of back pay that maybe awarded when compensating a plaintiff for lost wages ...," but does "not limit the entire award of lost wages to back pay alone." *Ante* at 811, 810 P.2d at 1097.

In reaching this conclusion, the majority has eclipsed the word "such" from the statute. If, as the majority claims, the phrase "such back pay" was only intended to limit the amount of back pay recoverable, the legislature would not have used the word "such." As written, the word "such" refers to the preceding phrase, "lost wages and benefits." The only interpretation of the phrase, "such back pay," which makes grammatical sense is that lost wages are limited to back pay, which under the statute is in turn limited to two years prior to filing the complaint.

The primary thrust of the Human Rights Act is to obtain reinstatement for those who have had their employment terminated in violation of the Act, and to recover their lost wages during the period it takes the Human Rights Commission to obtain their reinstatement. However, to expand the scope of the Human Rights Act into the issue of future damages, such as diminution in future earning capacity, would thrust the Commission into difficult damage and evidentiary issues which in the past have been the exclusive province of a properly instructed jury based upon evidence determined to be admissible by a law-trained judge. The rules of law which have developed surrounding the area of damages for proving loss or diminution of future wage earning capacity, and the rules dealing with the duty of the terminated employee to mitigate damages are quite complex (made more complicated by the Court's "bad faith" exception to the mitigation rule established in today's opinion), and amply demonstrate that it is good policy to leave the question of future damages to a court and jury, and not to the Human Rights Commission, whose members are not necessarily trained in the law and who would not necessarily reflect the same community values as a jury of the peers of the litigants. The legislature could reasonably have concluded, and I believe a clear reading of the statute suggests that they did conclude, that the Human Rights Commission should focus primarily upon reinstatement and collection of back wages, and leave the difficult and complicated factual and legal questions of loss of future earnings and earning capacity, together with concomitant mitigation requirements, ex-

clusively to the courts and the jury system. In I.C. § 67–5908 the legislature mandated, for good reason, that the Commission focus on reinstatement and recovery of lost wages which they limited to two years back pay. That, I believe, is what the statute says. It is good public policy. But even if it were not, that is a decision for the legislature, not for this Court.

With respect to the federal cases invoked by the majority for "guidance," it is important to note that the relevant language of the Idaho statute differs in crucial respects to the federal statutes upon which our act is based. The following excerpt from Title VII of 42 USC 2000e–5(g), is the forerunner of the language in the Idaho statute at issue. The federal statute states: "The court may ... order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay ... *Back pay liability shall not accrue* from a date more than two years prior to the filing of a charge ..." (Emphasis added.) The federal statute, in striking contrast to the Idaho statute, does not use the phrase, "such back pay." The federal statute is thus distinguishable from the Idaho statute, as are those federal cases that interpret Title VII as allowing front pay.

Finding no abuse of discretion, judged by the standard of our earlier cases of *Sanchez v. Galey, supra, Quick v. Crane, supra; Black v. Reynolds, supra; and Dinneen v. Finch, supra,* I would affirm the order of the trial court on the new trial motions.

BISTLINE, Justice, concurring in part and dissenting in part:

### Part IIA, Front Pay Under Idaho Human Rights Act:

I concur in the holding that front pay is a permissible element of damages under the Human Rights Act. I concur in the analysis by which that conclusion is reached, and concur specifically in the holding that the amount of damages to be awarded is a determination for the trier of fact, in this case the jury.

### Part IIB, Front Pay as An Element of Contract Damages:

I concur in the holding that front pay *is* a permissible element of contract damages. I concur in the conclusion to reverse the district court's determination that future lost wages are too speculative to ever be established as an element of contract damages.

### Part III, Breach of Contract to Reinstate:

I concur in reversing the district court's determination that O'Dell's own conduct made reinstatement unworkable and thus excused the J.R. Simplot Company from performance of the contract for reinstatement.

The district court's conclusion that the jury's finding of liability and the amount of damages was against the clear weight of the evidence, which the district court based on *its* reasoning that O'Dell's conduct made reinstatement unworkable, amounts to a manifest abuse of discretion. I concur in the analysis by which Justice McDevitt arrives at that conclusion.

### Part IV, Damages:

I dissent from this Court's conclusion that the district court properly granted a new trial as to the amount of damages awarded by the jury. The jury has spoken, and their determinations are supported by evidence presented at trial. It is not at all understood how it can be said, all in the same breath, "that although this finding of the trial court ('that the determination of future lost wages was too speculative to support the verdict') was error, we affirm the grant of a new trial on the issue of damages."

Where the trial court is held by this Court to have committed error in the "too speculative" assessment, it stands to reason that the trial court is not substantiated in setting aside the damages award and awarding a new trial on damages.

*Part V, Failure to Mitigate as Grounds for New Trial:*

I concur in the holding that Simplot's offer to work in the Food Division cannot be used to establish O'Dell's failure to mitigate. Other than for the final paragraph, I fully concur with the analysis made by Justice McDevitt. Because the trial court's discussion of the theory underlying contract breach is inconsistent, its determination that a new trial should be conducted to determine contract damages is not sound. I disagree with the conclusion that we *must* affirm the contract damage award on the predicate that the trial court incorrectly analyzed a failure to mitigate defense.

Concurring specially, I voice my own view that the jury, on the evidence presented, was exposed to corporate vindictiveness and egregious conduct to a reprehensible degree the likes of which has heretofore not been experienced. The suggestion that O'Dell should take another position in the same company which had so shamefully treated him for his actions in performing the very function for which he was employed, *i.e.,* the duties of monitoring practices and formulating and enforcing policies to eliminate unlawful discrimination and/or sexual harassment, is wholly untenable to the point of being absurd. No reasoning person could be expected, by reasonable persons, to give up the entitlement and claims pertinent to a position which he had performed well and faithfully—with no criticism whatever levelled at his performance, other than implicitly that he was far too faithful in carrying out his duties when it was the reported sexual harassment by a corporate division president which was involved—to take any other proffered company position the duration of which would be entirely at the whim of the corporation. The jury saw its duty under those facts and the court's instructions, and the jury did its duty, the doing of which was undone by the district court on grounds and reasoning not legally sustainable.

*Conclusion:*

I concur in the conclusions stated by Justice McDevitt, other than in remanding for reconsideration and more specific findings on the jury's award of damages, and in particular exemplary damages. In that regard note is taken of Justice McDevitt's analysis that the district court's stated basis for reducing the punitive damages award was its bare bones conclusion that "the clear weight of the evidence indicates that only $5000 was justified." Such is inconsistent with the statement that "there was evidence on which to base a larger award." Although I am wholly in accord with Justice McDevitt's view that such is not an adequate basis for discounting by $995,000 the collective judgment of the jury which was arrived at after being properly instructed,[4] I cannot agree to putting the district judge to the task of formulating further thoughts as to just why and how the conclusion was reached that the clear weight of the evidence would have allowed the jury to find that the corporate defendant should have been assessed only a paltry $5,000 for the type of unconscionable conduct which is thoroughly displayed in Justice McDevitt's statement of the facts and circumstances, and likewise set out in the briefs submitted on behalf of O'Dell.

The district judge is one of Idaho's more experienced and capable trial judges. To remand this case for his reconsideration is to intimate that he is not at all acquainted with the holdings of this Court in *Soria v. Sierra Pacific Airlines,* 111 Idaho 594, 726 P.2d 706 (1986); 114 Idaho 1, 752 P.2d 603 (1987); *Quick v. Crane,* 111 Idaho 759, 727 P.2d 1187 (1986); and *Dinneen v. Finch,* 100 Idaho 620, 603 P.2d 575 (1979). Such innuendo or insinuation is not justified. The very language used by the district

4. The instructions are not found in the record on appeal. It is found that there were sixty-seven instructions given, and that they were read to the jury. In such a case, we presume that they were free of error. The 1987 legislature enacted into law I.C. § 6–1601(9) to provide a statutory definition of punitive damages. That definition was accepted by this Court in promulgating Idaho Jury Instruction (IDJI) 921–1: "'Punitive damages' mean damages awarded to a claimant, over and above what will compensate the claimant for actual personal injury and property damage, to serve the public policies of punishing a defendant for outrageous conduct and of deterring future like conduct."

judge ("the clear weight of the evidence indicates that only $5000 was justified,") in and of itself demonstrates that the trial court had engaged itself in the *weighing* process. Having done so, the conclusion was reached by the district court—rightly or wrongly—that the egregious misconduct of the defendant corporation supported a punitive damage award of $5000. It further illustrates the court's erroneous belief that imposing a $5,000 fine on the Simplot Company and Mr. Basabe would serve the well-recognized twin purposes of punishment and deterrence. Obviously, as may be readily noted from the many important district court rulings which this Court is remanding for reconsideration, the district court did not see many of the O'Dell claims as having much merit, notwithstanding the verdict of the jurors.

The jury, however, saw merit in the plaintiff's case and it is to their collective judgment we should defer in the first instance. And, had the district court extended proper deference to the jury, we in turn would readily defer to the district court. Here the district court better would have paid heed to the writings of Justice Shepard in *Deshazer v. Tompkins*, 93 Idaho 267, 460 P.2d 402 (1969):

> The trial court lastly tells us that the verdict is contrary to the law and the evidence produced at trial. The earlier decision of this Court, the action of the trial court in ruling on the motion for judgment n.o.v., and the record itself militate against the trial court's conclusion that the verdict is contrary to the law. The majority opinion disposes of the trial court's conclusion that the verdict is contrary to the evidence produced at trial. There is then no conclusion but that the trial court committed error in granting a new trial. The majority opinion, however, states that such is not an abuse of discretion and that we must sustain the trial court in his order granting a new trial since a trial court may set aside a jury verdict if it fails to render substantial justice. This the majority opinion holds in spite of the admonition in *National Produce Distributors, Inc. v. Grube*, 78 Idaho 33, 297 P.2d 284 (1956);

> *Sanchotena v. Tower Co.*, 74 Idaho 541, 264 P.2d 1021 (1953), and cases cited therein, that,

>> If the court in the order granting a new trial expressly states the grounds upon which it is granted, this court on appeal will determine the appeal upon the issue of whether the particular ground stated would justify the granting of the motion.

> ....

> We may conclude that in the instant case the trial court clearly erred in granting a new trial upon the basis or grounds stated in its order. The majority opinion, however, states that the decision of the trial court must be affirmed on the supposed ground that substantial justice has not been done. No statutory authority exists therefor. If we are to believe that the jury is the trier of facts in civil cases, the majority opinion is erroneous. The majority opinion states that no right is denied the plaintiff in this action since he will have another trial. I suggest that after seven and one-half years in litigation the plaintiff will see little value in that conclusion. If he retains enough stamina and faith in our system of justice, he will continue to litigate and may ultimately prevail. Perhaps more than anything else, this case demonstrates the great truth contained in that simple statement, 'justice delayed is justice denied.'

*Deshazer*, 93 Idaho at 273–74, 460 P.2d at 408–09. Justice McQuade joined the opinion of Justice Shepard. Accepting that well stated view, it would seem appropriate that this Court not further delay justice, but rather that it respond to its obligation to proceed today to a decision which Judge Schroeder did not reach, and which it is not likely he will reach. Unlike compensatory damages which are subject to a weighing process where a trial judge during the course of the trial is able to subjectively arrive at an amount just as the jury does, there is no such weighing process in regard to assessing punitive damages. Moreover, such matters are better left to a jury. The jury learns of the conduct which is oppres-

sive or otherwise opprobrious, and reduces it to a dollar amount which it believes will serve the twin purposes of deterrence and punishment. In a very recent decision the Supreme Court of the United States upheld, as had the Alabama Supreme Court, a jury award of almost a million dollars in punitive damages. *Pacific Mutual Life Ins. Co. v. Haslip,* —— U.S. ——, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991). The jury instruction on punitives in *Pacific Mutual* reads:

> Now, if you find that fraud was perpetrated then in addition to compensatory damages you may in your discretion, when I use the word discretion, I say you don't have to even find fraud, you wouldn't have to, but you may, the law says you may award an amount of money known as punitive damages.
>
> This amount of money is awarded to the plaintiff but it is not to compensate the plaintiff for any injury. It is to punish the defendant. Punitive means to punish or it is also called exemplary damages, which means to make an example. So, if you feel or not feel, but if you are reasonably satisfied from the evidence that the plaintiff, whatever plaintiff you are talking about, has had a fraud perpetrated upon them and as a direct result they were injured and in addition to compensatory damages you may in your discretion award punitive damages.
>
> Now, the purpose of awarding punitive or exemplary damages is to allow money recovery to the plaintiffs, it does to the plaintiff, by way of punishment to the defendant and for the added purpose of protecting the public by deterring the defendant and others from doing such wrong in the future. Imposition of punitive damages is entirely discretionary with the jury, that means you don't have to award it unless this jury feels that you should do so.
>
> Should you award punitive damages, in fixing the amount, you must take into consideration the character and the degree of the wrong as shown by the evi-

dence and necessity of preventing similar wrong.

*Pacific Mutual v. Haslip,* —— U.S. at ——, 111 S.Ct. at 1037.

Assuming that the instruction given to the jury on awarding punitive damages in today's case was in accord with the approved Idaho pattern jury instructions, it would have read:

Element of Damages–Punitive Damages

> If you find that the defendant corporation's acts which proximately caused injury to the plaintiff were an extreme deviation from reasonable standards of conduct and that these acts were performed by the defendant with malice, oppression, or wantonness, you may, in addition to any compensatory damages to which you find the plaintiff entitled, award to plaintiff an amount which will punish the defendant and deter the defendant and others from engaging in similar conduct in the future.
>
> You have been permitted to hear evidence pertaining to defendant's wealth and financial condition. This evidence was admitted for your consideration only with reference to the question of exemplary or punitive damages in light of all of the other evidence if you determine that such an award would be made in this case.

IDJI 921–1.[5] It would be manifestly unjust to return this to the district judge and ask him to decide it any differently than he did, and did full well knowing the directions which this Court laid out in the *Soria* case, in *Quick,* and in *Dinneen.* The court below has fulfilled its function, and because of whatever view it entertained as to the merits of O'Dell's case, has ruled that the defendant corporation's outrageous conduct should cost it but $5,000, which in the views which have been for years and years entertained by this Court does not equate with the purpose of punishing this defendant *and others* from engaging in similar conduct in the future.

---

**5.** This instruction compares very favorably with the instructions set out by Justice Blackman for an almost unanimous Court in *Pacific Mutual v. Haslip.*

By comparison, in the case against Sierra Pacific Airlines reviewed in *Soria,* the jury's award of $750,000 in punitive damages was upheld by the district court and in turn by this Court. In that case, as in this, the jury's award was based on a corporation's conduct in "playing it fast and loose" with the lives and plans of people, which phrase I borrow from one of my North Idaho mentors, Judge McNaughton, who graced this bench in the years 1930–1931, and thereafter returned to his practice in Coeur d'Alene. On the first *Soria* appeal, in approving the imposition of punitive damages our opinion stated that:

> 'An award of punitive damages will be sustained on appeal only when it is shown that the defendant acted in a manner that was "an extreme deviation from reasonable standards of conduct, and that the act was performed by the defendant with an understanding of or disregard for its likely consequences." ' *Id.* (Citation omitted.) 'The justification for punitive damages must be that the defendant acted with an extremely harmful state of mind, whether that state be termed "malice, oppression, fraud, or gross negligence." ' *Id., quoting from Morrison v. Quality Produce, Inc.,* 92 Idaho 448, 450, 444 P.2d 409, 411 (1986).

*Soria,* 111 Idaho 594, 610–11, 726 P.2d 706, 712–13 (1986).

One of the best-reasoned opinions written by this Court relative to punitive damages is *Boise Dodge v. Clark,* 92 Idaho 902, 453 P.2d 551 (1969). The Court was unanimous, Justice McQuade writing, joined by Justices McFadden, Donaldson, Shepard, and Spear. The jury's verdict assessed, in addition to compensatory damages, $12,500, for wilful or wanton misconduct found to be gross and outrageous, which, according to the court's instructions would "serve to punish the cross-defendant, Boise Dodge, Inc., and to deter others from the commission of like offenses." The offense in that case was like a snowball to a glacier in comparing it to the conduct which we review today. It consisted of turning back the mileage on the odometer of a car which was in truth a used car, but which was represented as a demonstrator.

This Court has not always abstained from reaching its own collective decision as to the propriety of a punitive damage award. Clearly we, as well as the trial court, are capable of determining whether the jury's assessment was a proper award for such egregious conduct as we see before us in this case. The trial judge, having once undertaken to do so, would certainly be placed in an awkward position if directed to try again. In these circumstances there are no issues of credibility of witnesses. Plainly and obviously, we can and should spare the district court and come to our own conclusion, and thereby put the case to a final rest. Justice delayed *is* justice denied. We should say today that this Court does not agree with the result and accordingly should, in this unique situation, do as this Court has done in the past—reach a conclusion as to the validity of the jury's assessment. Only timidity stands in the way of doing so. If referred to another district judge, that judge would be no better able to come to a conclusion than are we. We can also take note that no inflammatory language was used in final summations to the jury. In fact, plaintiff's counsel's statement was very low-key:

> If you believe ... that J.R. Simplot Company is responsible for the conduct of John Basabe as its agent in the contractual breaches that occurred, the J.R. Simplot Company is responsible for the manipulative conduct of all of its other agents and that that conduct was extreme, outrageous, beyond acceptable standards, you may award punitive damages, not simply for the simple breach of the contract but for the excessive nature of the conduct. You may award punitive damages which will by punishing the Defendants, serve to deter the Defendants and others from engaging in similar conduct.
>
> These damages aren't awarded very often, Ladies and Gentlemen. In fact one case in my 12 years of practice; of the attorneys I know I can count on three fingers those who have ever received any kind of punitive damage

awards. They are designed for the most outrageous of exceptions. And I believe that this is an outrageous situation. I believe that the only way, the only way that the J.R. Simplot Company will correct its corporate ethics, will do differently to others different than it has to Glenn O'Dell, will confront the problem of John Basabe, is if it costs them money. A verdict out of this courtroom that they can take home and pay off in a day's income would equal the income of all the people in this courtroom is not going to deter the J.R. Simplot Company or others who may think of doing the same thing. And unfortunately there are other employers out there who engage in similar practices. It wouldn't deter them from doing it again in the future.

What's an appropriate amount? I can't tell you. The amount should be something which would punish the Defendant. It should be an amount which would be sufficient to deter, those are the concepts that you deal with. In a company—let's take just the Land and Livestock Division. The Land and Livestock Division had gross sales of over 200 million dollars in 1987. If you took one half of one percent of their gross sales, one half of one percent would be a million dollars. If you took a quarter of a percent it would be half a million dollars. How much money will send the message to punish this company and deter it from this conduct again in the future?

I believe it's appropriate in this case, because of the outrageousness of the case. If, in standing here and requesting these damages I offend you or offend your sense of justice, or you have some sense that we have overreached on this case because we can't communicate in a dialogue about what you feel, then arrive at your own conclusions.[6]

JOHNSON, Justice, concurring and dissenting.

I concur in all parts of the opinion of the Court, except part I (NEW TRIAL) and part IV (DAMAGES). I dissent from part I because it holds that a motion for new trial under I.R.C.P. 59(a)(6) may be predicated on the grounds of excessive damages. I concur in part IV as to the I.R.C.P. 59(a)(5) porton and dissent from the statements concerning I.R.C.P. 59(a)(6). In my view, when read carefully, our prior decisions hold that a new trial on the ground of excessive damages may be considered only under I.R.C.P. 59(a)(5).

In 1881, the legislature of the Idaho Territory enacted a code of civil procedure. 1881 Gen. Laws of Terr. of Idaho, p. 1. § 411 of this code provided a procedure for granting new trials. *Id.* at 88. Subsections 5 and 6 of § 411 provided:

> Sec. 411. The former verdict or other decision may be vacated and a new trial granted, on the application of the party aggrieved, for any of the following causes, materially affecting the substantial rights of such party:
>
> . . . .
>
> 5. Excessive damages, appearing to have been given under the influence of passion or prejudice;
>
> 6. Insufficiency of the evidence to justify the verdict or other decision, or that it is against the law;
>
> . . . .

The statute became § 4439 of the revised statutes of the Idaho Territory in 1887 and remained in its original form through successive codification of the Idaho laws until it was repealed in 1975, except for the addition of a new subsection 8 in 1931. R.S., R.C., & C.L., § 4439; C.S., § 6888; 1931 Idaho Sess. Laws, ch. 12, § 1, p. 15 (adding subsection 8); I.C.A. § 7–602; I.C. § 10–602; 1975 Idaho Sess. Laws, ch. 242, § 1, effective March 31, 1975 (repealing the entire section).

Effective November 1, 1958, this Court promulgated the Idaho Rules of Civil Procedure. On the subject of motions for new trial, the new rules said: "A new trial may be granted to all or any of the parties and on all or part of the issues for any of the reasons provided by the statutes of this

---

**6.** Counsel's figures appear to have been predicated on the testimony of Mr. Gary E. Wallis, an employee of the Simplot Company, found beginning at page 1725 of the reporter's transcript.

state." I.R.C.P. 59(a) (1958). In 1958, I.C. § 10–602 contained subsections (5) and (6) as originally enacted by the territorial legislature in 1881.

Effective January 1, 1975, I.R.C.P. 59(a) was amended to incorporate the reasons for granting a new trial in substantially the form contained in I.C. 10–602, as it then existed, with a few changes. In the new version of the rule, subsections (5) and (6) stated:

> A new trial may be granted to all or any of the parties and on all or part of the issues in an action for any of the following reasons:
>
> . . . .
>
> 5. Excessive damages or inadequate damages, appearing to have been given under the influence of passion or prejudice.
> 6. Insufficiency of the evidence to justify the verdict or other decision, or that it is against the law.

I.R.C.P. 59(a)(5) and (6) (1975). These portions of the rule have existed in this form since 1975. I.R.C.P. 59(a)(5) and (6) (1990).

In 1979, this Court considered a case in which the trial court had denied a motion for new trial brought under I.R.C.P. 59(a)(5) on the grounds that the verdict was inadequate. *Dinneen v. Finch*, 100 Idaho 620, 603 P.2d 575 (1979). In *Dinneen*, the Court said:

> Where a motion for a new trial is premised on inadequate or excessive damages, the trial court *must* weigh the evidence and then compare the jury's award to what [the trial court] would have given had there been no jury. If the disparity is so great that it appears to the trial court that the award was given under the influence of passion or prejudice, the verdict ought not stand. It need not be proven that there was in fact passion or prejudice nor is it necessary to point to such in the record. The appearance of such is sufficient.

*Id.* at 626–27, 603 P.2d at 581–82 (emphasis in original).

In 1986, the Court reiterated this formulation in *Soria v. Sierra Pacific Airlines, Inc.*, 111 Idaho 594, 608, 726 P.2d 706 (1986) and in *Quick v. Crane*, 111 Idaho 759, 727 P.2d 1187 (1986). In *Soria*, the defendant had moved for a new trial on the grounds that the damages awarded the plaintiffs were excessive. The trial court denied the motion. In reviewing the trial court's decision, the Court said: "In deciding a motion for a new trial premised upon an allegation of either excessive or inadequate damages, the trial court *must* weigh the evidence and determine if the verdict was awarded under the influence of passion or prejudice." 111 Idaho at 608, 726 P.2d at 720 (emphasis in original).

In *Quick*, the Court considered the trial court's denial of a motion for new trial brought under I.R.C.P. 59(a)(5) on the grounds that the damages awarded by the jury were excessive and said:

> In ruling upon a motion for a new trial premised upon inadequate or excessive damages, the rule the trial court must follow is set forth in *Dinneen v. Finch*, 100 Idaho 620, 603 P.2d 575 (1979):
>
> > "Where a motion for a new trial is premised on inadequate or excessive damages, the trial court *must* weigh the evidence and then compare the jury's award to what he would have given had there been no jury. If the disparity is so great that it appears to the trial court that the award was given under the influence of passion or prejudice, the verdict ought not stand. It need not be proven that there was in fact passion or prejudice nor is it necessary to point to such in the record. The appearance of such is sufficient."

111 Idaho at 768, 727 P.2d at 1196 (emphasis in original).

Later in 1986, the Court considered a case in which the trial court had granted a remittitur of a portion of the damages awarded by the jury, or in the alternative a new trial under I.R.C.P. 59(a)(5) on the grounds that excessive damages had been awarded by the jury. *Sanchez v. Galey*, 112 Idaho 609, 733 P.2d 1234 (1986) (*Sanchez I*). In summarizing the holdings of *Dinneen* and *Quick* in *Sanchez I*, the Court said:

In sum, *Dinneen* and *Quick* suggest the following course of conduct for a trial court judge pursuant to a motion for new trial under I.R.C.P. 59(a)(5) and (6): The trial court is not merely to weigh its calculations as against those of the jury. Rather, the trial court is to weigh the evidence to determine if the jury's verdict is supportable by the evidence and when it thinks not, it should grant a new trial pursuant to I.R.C.P. 59(a)(6). If, technically, the verdict is supported by substantial, competent evidence and it still finds the verdict excessive, then it must rule whether in its opinion the jury appears to have acted under the influence of passion or prejudice. In ascertaining whether the jury appears to have so acted, the judge looks to the disparity between the awards and to whether such disparity "shocks the conscience."

*Id.* at 615, 733 P.2d at 1240.

While this statement may be read as indicating that a motion for new trial on the grounds of excessive damages may be brought under I.R.C.P. 59(a)(6), to this extent the statement is dicta. The motion for new trial in *Sanchez I* was under I.R.C.P. 59(a)(5) only. There was no motion under I.R.C.P. 59(a)(6) in *Sanchez*. Also, the statement in *Sanchez* quoted above erroneously summarized *Dinneen* and *Quick.*

In *Dinneen*, the Court considered the trial court's denial of a motion for new trial only under I.R.C.P. 59(a)(5). In holding that the trial court should have granted a new trial, the Court said:

> The ... verdict, allowing only $540 over the uncontradicted medical expenses and lost property with apparently no lost wages at all, is so small as to "shock" our collective "conscience." In our view the trial court should have concluded that such a small award suggested a verdict appearing to have been rendered under the influence of passion or prejudice. Accordingly, we hold there was error in not granting a new trial.

100 Idaho at 627, 603 P.2d at 582.

In *Quick*, the Court considered the granting of a new trial on the grounds the jury awarded excessive damages only under I.R.C.P. 59(a)(5). The analysis of the scope of I.R.C.P. 59(a)(6) in *Quick* was in relation to the jury's apportionment of negligence. In addition, the Court pointed out:

> It should be emphasized again that the rule that a verdict will not be set aside when it supported by substantial but conflicting evidence has *no application* to a trial court ruling upon a motion for a new trial. As noted in the previous section, this substantial evidence standard is applicable to a trial court's determination on a motion for judgment n.o.v.

111 Idaho at 770, 727 P.2d at 1198 (citations omitted) (emphasis in original).

Therefore, the statement in *Sanchez I* indicating that the verdict was supported by "substantial, competent evidence" has nothing to do with the consideration of excessive damages under I.R.C.P. 59(a)(6). Rather, it refers to the standard for considering a motion for judgment n.o.v.

In summary, *Dinneen, Quick,* and *Sanchez I* do not provide authority for the consideration of a motion for new trial under I.R.C.P. 59(a)(6) on the grounds of excessive damages.

I acknowledge my complicity in fostering the idea that a motion for new trial on the grounds of excessive damages may be considered under I.R.C.P. 59(a)(6). In *Sanchez v. Galey*, 115 Idaho 1064, 772 P.2d 702 (1989) (*Sanchez II*), I authored the portion of the opinion that affirmed the trial court's order requiring a remittitur or granting a new trial. Although it is clear that the trial court's order was affirmed under I.R.C.P. 59(a)(5), I did quote the dicta from *Sanchez I* that refers to the review by the trial court of a verdict under I.R.C.P. 59(a)(6) " 'to determine if the jury's verdict is supportable by the evidence.' " *Id.* at 1070, 772 P.2d at 708. I concluded this portion of the opinion in *Sanchez II* by stating:

> On remand the trial court found that the amount of the verdict did not shock him, but that he did find it unconscionable. The trial court also found that the amount of the verdict indicated that the jury was acting under the influence of passion or prejudice. Based on these

additional findings, the trial court re-instituted the remittitur. The trial court's findings fulfilled the condition precedent established by this Court in *Sanchez I* for re-instituting the remittitur. That condition precedent is the law of this case. I am unwilling to tinker with the exercise of the trial court's discretion in making these findings. To do so, not only violates the law of this case, but also changes the law in this state concerning the granting of motions for new trials under I.R.C.P. 59(a)(6) as succinctly stated in *Sanchez I.*

*Id.* It is now clear to me that the reference in the last sentence of this paragraph to I.R.C.P. 59(a)(6) should have to I.R.C.P. 59(a)(5). Otherwise, the reference is dicta, because there was no motion under I.R.C.P. 59(a)(6) in *Sanchez I* or *II.*

In my view, it is time for this Court to make clear that motions for new trial on the grounds of excessive or inadequate damages are to be considered only under I.R.C.P. 59(a)(5) and not under I.R.C.P. 59(a)(6). There are no clear holdings of this Court since the promulgation of I.R.C.P. 59(a)(5) and (6) that contradict this formulation.

If we are to allow motions for new trial on the grounds of excessive or inadequate damages to be considered under I.R.C.P. 59(a)(6), then there will be no purpose in making a motion for new trial under I.R.C.P. 59(a)(5). In *Quick,* the Court stated the scope of a trial court's discretion under I.R.C.P. 59(a)(6):

Idaho Rule of Civil Procedure 59(a)(6) permits the trial court to grant a new trial on all or part of the issues in an action by reason of the "[i]nsufficiency of the evidence to justify the verdict or other decision, or that it is against the law." It is well established that the trial judge may grant a new trial based on I.R.C.P. Rule 59(a)(6) where, after [the trial court] has weighed all the evidence, including [the trial court's] own determination of the credibility of the witnesses, he concludes that the verdict is not in accord with [the trial court's] assessment of the clear weight of the evidence.

111 Idaho at 766, 727 P.2d at 1194.

Under this standard, if the trial court concludes that the damages awarded by the verdict are either excessive or inadequate in accord with the trial court's assessment of the clear weight of the evidence, the trial court is authorized to grant a new trial. On the other hand, if the trial court concludes that the damages awarded by the verdict are not either excessive or inadequate in accord with the trial court's assessment of the clear weight of the evidence, what is the purpose of weighing the evidence and comparing the jury's award to what the trial court would have given had there been no jury, as directed under I.R.C.P. 59(a)(5)? If the clear weight of the evidence supports the amount of damages awarded by the jury, why should the trial court be allowed to grant a new trial?

As one commentator has noted, the application of the I.R.C.P. 59(a)(6) standard to motions for new trial on the grounds of excessive or inadequate damages "renders I.R.C.P. 59(a)(5), the appearance of passion or prejudice as grounds for granting a new trial, mere surplusage." Blewett, "Ruling on the New Trial Motion: What Standard for the Idaho Trial Judge?" 17 Idaho L.Rev. 249, 252, n. 17 (1981).

To allow this subject to fester further will be a disservice to not only our trial judges, but to the bar. We need to clarify now whether motions for new trial on the grounds of excessive or inadequate damages may be considered under I.R.C.P. 59(a)(6). If so, we should also declare the demise of I.R.C.P. 59(a)(5). I do not understand how we can allow motions for new trial on the grounds of excessive or inadequate damages to be considered under both rules.