**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 36445**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **2010 Opinion No. 54** |
| Plaintiff-Respondent, | ) |
| | ) **Filed: August 5, 2010** |
| v. | ) |
| | ) **Stephen W. Kenyon, Clerk** |
| CHRISTOPHER R. SCHULTZ, | ) |
| | ) |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Cassia County. Hon. Michael R. Crabtree, District Judge.

Order of the district court denying motion to withdraw guilty pleas, <u>affirmed</u>.

Molly J. Huskey, State Appellate Public Defender; Diane M. Walker, Deputy Appellate Public Defender, Boise, for appellant. Diane M. Walker argued.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

_____

PERRY, Judge Pro Tem

Christopher R. Schultz pleaded guilty to robbery and attempted rape with a sentence enhancement for use of a deadly weapon. The district court denied Schultz's post-sentencing motion to withdraw his guilty pleas, brought on the theory that the state had breached a plea agreement with regard to its sentencing recommendations. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

This is the second time this case has come before this Court. While at his estranged wife's residence in violation of a no-contact order, then seventeen-year-old Schultz told a friend of his plan to invade the home of a woman who lived in the apartment below in order to rape and kill her. Armed with a knife and wearing a self-fashioned mask and gloves, he waited until the victim's husband left and then forced his way into the apartment. Once inside, he held the knife to the victim's throat and demanded money. He also demanded that she show him her breasts.

1

The victim distracted Schultz by throwing her purse at him, fled the apartment, and called the police. Schultz also fled, taking the victim's purse with him. Schultz was arrested a short time later.

The state filed a petition under the Juvenile Corrections Act charging Schultz with four felonies: battery with the intent to commit a serious felony (rape), burglary, robbery, and attempted rape. Four sentence enhancements were alleged for using a deadly weapon in the commission of those crimes. Seeking to prosecute Shultz as an adult, along with the petition, the prosecution filed a motion to waive juvenile jurisdiction.[1] At the waiver hearing proceeding before a magistrate judge, defense counsel stated:

> [I]n talking with Christopher [Schultz] and previously talking with [prosecutor] Mr. Schneider, Mr. Schneider agreed that upon waiver [to adult court] and if Christopher ultimately ends up entering a guilty plea to at least some of the charges, the State would make a recommendation to the district court judge of a sentence not to exceed--and certainly it could be less than this depending on negotiations, but not to exceed a five-year minimum and a 20 year top on the sentence.
>
> Certainly, without admitting any of the facts or the allegations in this matter, but after reviewing the report with Christopher, he is prepared to waive his rights as a juvenile and proceed into adult court. He realizes his situation is such that certainly it's very likely that he would be waived, and, therefore, he's willing to waive into the adult system, your Honor.

The deputy prosecutor did not respond to defense counsel's statement. After considering the factors enumerated in Idaho Code Section 20-508(8), in addition to Schultz's stipulation, the magistrate found that waiver of juvenile jurisdiction was warranted and entered an order to that effect. The matter then proceeded in accord with an adult criminal prosecution. Specifically, the prosecution filed a complaint in magistrate court, Schultz made an initial appearance before a magistrate, and a magistrate conducted a preliminary hearing. After Schultz was bound over to district court, he pleaded not guilty at the arraignment and a trial date was set. As per the practice of the respective offices, the prosecutor and the defense counsel that attended the juvenile proceeding no longer handled the case; instead, a different felony prosecutor and defense counsel were assigned.

On the day the jury trial was set to commence, a plea agreement was placed on the record before the district court. The agreement called for Schultz to enter a guilty plea to the robbery

---

[1]     *See* I.C. §§ 20-508, 20-509, 1-2208(4); Idaho Juvenile Rule 26.

charge, an *Alford*[2] guilty plea to the attempted rape charge, and to plead guilty to the deadly weapon enhancement attendant to the attempted rape charge, with the remaining charges to be dismissed. The agreement further provided that the prosecution would recommend twenty-year fixed sentences, that it could recommend up to the maximum indeterminate sentences on both charges, and that the defense was free to recommend any sentence thought appropriate. When questioned by the trial court, Schultz indicated that this was his understanding of the plea agreement.

At sentencing, the prosecution recommended a unified life sentence, with twenty years fixed, for robbery and a concurrent unified thirty-year sentence, with twenty years fixed, for attempted rape with the weapon enhancement. The defense asked for significantly lesser sentences and requested retained jurisdiction. The district court imposed a unified life sentence, with fifteen years fixed, for robbery and a concurrent unified thirty-year sentence, with fifteen years fixed, for attempted rape with the weapon enhancement.

Schultz appealed from the judgment of conviction and the case was assigned to this Court. On appeal, Schultz raised an issue that had not been preserved by objection below. He argued that fundamental error occurred because the "plea agreement" outlined by defense counsel at the juvenile waiver hearing was final and binding on the state and that the state's ultimate sentencing recommendation breached its terms. This Court, deeming the record inadequate to resolve the issue, declined to decide which of the two plea agreements controlled. *State v. Schultz*, Docket No. 33000 (Ct. App. May 13, 2008) (unpublished). We also specifically noted that Schultz could pursue his claim through appropriate proceedings in the trial court should he choose to do so. On the other issue presented, this Court affirmed the district court's sentences.

After *Schultz I* was issued, Schultz filed a motion with the trial court seeking to withdraw his guilty pleas. After an evidentiary hearing, the district court denied the motion, holding, among other things, that the plea "agreement" referred to by defense counsel at the waiver hearing was preliminary in nature and that no meeting of the minds occurred until the final plea agreement was reached later in the district court. Schultz appeals.

**II.**

---

[2]     *See North Carolina v. Alford*, 400 U.S. 25 (1970).

3

## STANDARD OF REVIEW

"[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262, 92 S. Ct. 495, 499, 30 L. Ed. 2d 427, 433 (1971). "Whether a plea agreement has been breached is a question of law to be reviewed by this Court *de novo,* in accordance with contract law standards." *State v. Jafek*, 141 Idaho 71, 73, 106 P.3d 397, 399 (2005) (citing *United States v. Bunner*, 134 F.3d 1000, 1003 (10th Cir. 1998)); *see also Puckett v. [United States]*, ---U.S. ----, ----, 129 S. Ct. 1423, 1430, 173 L. Ed. 2d 266, 276 (2009) ("[P]lea bargains are essentially contracts. When the consideration for a contract fails--this is, when one of the exchanged promises is not kept--. . . we say that the contract was broken.").

In determining whether the State has breached a plea agreement a court must examine the language of the plea agreement, and where the language of that plea agreement is ambiguous, those ambiguities shall be resolved in favor of the defendant. *State v. Fuhriman,* 137 Idaho 741, 745, 52 P.3d 886, 890 (Ct. App. 2002). "The burden of proving the existence of a contract and the fact of its breach is upon the plaintiff." *O'Dell v. Basabe*, 119 Idaho 796, 813, 810 P.2d 1082, 1099 (1991); *see also Johnson v. Nasi*, 50 Wash. 2d 87, 309 P.2d 380, 382 (1957) ("The burden of proving a contract, whether express or implied, is on the party asserting it, and he must prove each essential fact, including the existence of a mutual intention.").

The determination that a plea agreement is ambiguous is a question of law; however, interpretation of an ambiguous term is a question of fact. *State v. Allen*, 143 Idaho 267, 272, 141 P.3d 1136, 1141 (Ct. App. 2006). Factual determinations made by a trial court shall not be set aside on review unless they are clearly erroneous. *Bramwell v. S. Rigby Canal Co.*, 136 Idaho 648, 650, 39 P.3d 588, 590 (2001).

*State v. Peterson*, 148 Idaho 593, 595, 226 P.3d 535, 537 (2010).

## III.

## ANALYSIS

Schultz asserts that the "plea agreement" set forth on the record in front of a magistrate judge was complete in its terms, and therefore it was final and binding on the district court and the prosecutor at the felony sentencing. In support of his position, he relies heavily on our Supreme Court's opinion in *Peterson*. In that case, the defendant was arrested and initially charged with a number of offenses all stemming from one incident, including one felony drug charge. At the preliminary hearing on the felony charge, the prosecution moved for a continuance because the lab testing on the substance had not been completed. The magistrate denied the motion and dismissed the charge, telling the prosecutor that the charge could be re-filed as a new complaint if a lab report was obtained. This was done, but the new felony

4

complaint and the original complaint, which now contained only two misdemeanor charges, were not joined for trial but instead remained separate. At a plea hearing before a magistrate, Peterson entered into an oral plea bargain wherein he pleaded guilty to one misdemeanor with an agreed-upon sentence of six months probation and the other misdemeanor was dismissed. During the hearing, defense counsel also said:

> Your Honor, I just want to make sure that everybody knows-this all came from a bunch of different charges and things, and this will resolve this entire case, just in case we don't think it does. I assume it would automatically, but I just wanted to put that on the record.

The prosecutor said nothing to dispute this articulation, the plea bargain was accepted by the magistrate, and Petersen was sentenced.

After Peterson completed his misdemeanor probation, the state pursued the felony drug charge. Peterson moved to dismiss, contending that the charge had been disposed of by the plea agreement. The district court denied the motion, but on appeal from the defendant's subsequent conviction our Supreme Court reversed. The Court held that Peterson met his burden of proving the existence and content of the plea agreement, that ambiguities regarding the content of a plea agreement are to be interpreted in favor of the defendant, and that while the general rule is that silence does not constitute acceptance of an offer, the case fell outside of the general rule. *Id.* at 596-97, 226 P.3d at 538-39. Specifically, the Court said:

> The record shows that Peterson, as the party attempting to enforce the contract, met his burden of proving the existence and content of that contract through the introduction of the transcript of the December 1, 2003, plea hearing, wherein Peterson's counsel recited the terms of the plea agreement, such terms being agreed to by the State, and then offered his clarifying statement of the scope of the agreement, with no objection or response from the State. The record before us demonstrates that Peterson understood the plea agreement to be in resolution of all charges arising from his August 20, 2003, arrest. Following Peterson's counsel's clarifying statement, the prosecutor stood silent. Based upon the facts of this case, where both the prosecution and defense have assented to entry of the plea agreement contract, and where, immediately following the court's acceptance of the plea agreement, defense counsel proffers a description of the scope of the plea agreement, said description differing from what the prosecutor understands the agreement to encompass, the prosecutor has an affirmative duty to dispute the defendant's representation of the scope of the plea agreement, or to ask for further time to clarify the agreement. Otherwise silence shall be interpreted as acceptance of the stated terms.
> Here the prosecution understood what Peterson believed the plea agreement to be, and took the benefit of that contract in allowing Peterson to

5

plead guilty and complete his probation. Having taken that benefit with the knowledge that Peterson believed the guilty plea was in resolution of all charges arising from the August 20, 2003, arrest, the prosecution cannot now deny Peterson his benefits under that contract. As was noted by the Ninth Circuit Court of Appeals in *United States v. Krasn*, 614 F.2d 1229, 1234 (9th Cir. 1980), in some cases the duty of the prosecutor to act in good faith throughout the plea bargaining phase includes an obligation to inform the defendant of other charges which may be filed. In light of the fact that the felony charge had previously been dismissed, and the statement made by Peterson's counsel about the scope of the plea agreement, this was clearly such a case.

*Id.* On this holding, our Supreme Court vacated the felony conviction.

Schultz's circumstance is different than was Peterson's in a material way. In *Peterson*, the defendant satisfied his burden of proving the existence of a plea agreement contract and the issue presented was the scope of that agreement, which was ambiguous, and our Supreme Court resolved that ambiguity in favor of the defendant. Here, in contrast, the preliminary issue presented is whether Schultz proved that the parties' mutual intention was to enter into a binding plea agreement at the time of the juvenile waiver hearing. In this circumstance, Schultz is not entitled to resolution of ambiguity in his favor, instead he bears the initial burden of proving the existence of a contract and each essential fact, including mutual intent to contract. *Id.* at 595, 226 P.3d at 537.

Here, the district court held, in essence, that the plea "agreement" referred to by defense counsel at the juvenile waiver hearing was preliminary in nature and that no meeting of the minds occurred until the final plea agreement was entered before the trial court. The record supports the district court's conclusion. At the evidentiary hearing on Schultz's motion to withdraw his guilty pleas, it was established that there were four attorneys involved in Shultz's case: a juvenile prosecutor and a juvenile defense counsel, who handled only the juvenile waiver hearing, and a felony prosecutor and a felony defense counsel, who handled the case after juvenile jurisdiction was waived. The juvenile defense counsel testified that when reciting a contemplated plea agreement in juvenile court for the magistrate's information he sometimes was specific in detailing all the terms and sometimes merely provided a general summary of the plea agreement, but that he could not remember which occurred here. Juvenile defense counsel could not remember whether he ever had a conversation with the juvenile prosecutor regarding a plea agreement at all and the juvenile prosecutor could not remember having any such conversation. The juvenile prosecutor further testified that, although he was authorized to

6

negotiate plea agreements in criminal cases, he generally would not negotiate plea agreements in felony cases resulting from a waiver of juvenile jurisdiction and that the felony prosecutor would be responsible for those negotiations. The felony prosecutor testified in concurrence with the juvenile prosecutor on these points.[3]

In addition, at the hearing a written plea offer, prepared by the felony prosecutor prior to the juvenile waiver hearing, was placed in the record. The offer called for Schultz to waive juvenile jurisdiction, to waive his right to a preliminary hearing on the felonies, and to plead guilty at arraignment to battery with intent to commit a serious felony (rape), a deadly weapon enhancement on that charge, and to robbery. If all of these conditions were met, the written offer provided that in exchange the prosecution would, at sentencing, recommend concurrent unified sentences of twenty years, with five years fixed. However, neither the juvenile prosecutor nor the juvenile defense counsel could remember whether they saw this document or whether the juvenile defense counsel's recitation of the "agreement" at the waiver hearing was intended as a summary of that written offer. If so, it is uncontested that Schultz's only performance in accord with that offer was to waive juvenile jurisdiction. He did not waive his preliminary hearing and he did not plead guilty to the specified charges at the district court arraignment. Instead, pretrial proceedings continued, including ongoing and numerous plea negotiations between the felony defense attorney and the felony prosecutor, necessitated largely by the fact that Schultz did not want to plead guilty to a sex offense.

Further, the parties' actions at the district court level belie the conclusion that the parties had reached a final plea agreement resolution early on in the case. At the change of plea hearing before the district court the terms of the plea agreement were placed in the record as follows:

> [PROSECUTOR]: The defendant is going to enter guilty pleas to three separate counts; robbery, which is Count V of the information; attempted rape, which is Count VII; along with the enhanced penalty, which is Count VII [sic].
> At the time of sentencing the state will recommend a sentence of 20 years fixed, and then it's free to recommend up to the maximum for an indeterminate period of time. And I guess another way of saying that is that the state can recommend up to 20 to life in this case.
> At the time of sentencing the remaining counts would be dismissed. Additionally, it's my understanding that with respect to Count VII, the defendant would be entering an Alford plea, but to the other counts, specifically the robbery,

---

[3] Felony defense counsel did not testify at the motion hearing.

the plea would be a straight up guilty plea. I believe that covers our plea agreement at this time.

    THE COURT: All right. If I understand correctly, Mr. Schultz, the state advises me that you're going to plead guilty to Count V, and Count V is robbery; and you're going to plead to Count VII, and Count VII is attempted rape; and you're going to plead to an enhanced penalty.

    The state--If you do that, the state's going to recommend 20 years fixed and some more, but they haven't told me how much more that would be indeterminate; and that you would be entering a North Carolina Alford plea on Count VII, attempted rape; and you would be pleading straight up to the robbery. Is that correct, [defense counsel]?

    . . . .

    [DEFENSE COUNSEL]: The only other term, the specific term and condition of the plea negotiations is that the defendant will be free to recommend whatever sentence he feels is appropriate at the time of sentencing. This is certainly not a stipulated sentence. I'll just leave it at that. Thank you, your Honor.

    . . . .

    [DEFENSE COUNSEL]: Your Honor, I did want to add one additional item for the record, and that is that as part of the plea negotiations, the state had specifically agreed to not attempt at any point in the future to file attempted murder charges against this defendant based upon the same set of facts and circumstances.

After a break in the proceedings, the district court continued:

    THE COURT: Thank you. Mr. Schultz, your lawyer is telling me that you now intend to enter a guilty plea, a North Carolina versus Alford guilty plea to Count V, robbery, to Count VII, attempted rape, with an enhanced penalty, count number eight.

    As I remember . . . the prosecutor will be asking for 20 fixed, plus an unspecified indeterminate term. There's an agreement that no attempted murder charge would be filed and that your lawyer can argue to me any sentence you wish. Is that your understanding of the plea agreement?

    THE DEFENDANT: Yes, your Honor.

Thus, the felony prosecutor, felony defense counsel, the district court and Schultz all participated in the discussions. Unlike the prosecutor in *Peterson*, the felony defense counsel here did not stand silent, but instead clarified specific terms of the plea agreement, including that Schultz was free to argue for any sentence he felt was appropriate in recognition of the state's sentencing recommendation. Prior to entering his guilty pleas before the district court, Schultz filed no motion seeking enforcement of the earlier "agreement" that he now contends was final and binding, including at the felony change of plea hearing where the "contrary" terms of a plea

8

agreement were recited in full and complete detail.[4]  In fact, there is no indication in the record that the earlier "agreement" was ever disclosed to the district court by counsel prior to Schultz entering his guilty plea.  Instead, the juvenile waiver hearing "agreement" first came to light as an issue raised by appellate counsel during Schultz's direct appeal.  Based on the foregoing, we affirm the district court's conclusion that Schultz had failed to meet his burden to show that the juvenile waiver hearing recitation was intended as a complete and final plea agreement.[5]

Schultz has failed to establish error in the district court's determination that defense counsel's juvenile waiver hearing recitation did not constitute a final plea agreement. Accordingly, the district court's denial of Schultz's motion to withdraw his guilty pleas is affirmed.

Judge GUTIERREZ and Judge MELANSON **CONCUR.**

---

[4]     Even assuming there was an "agreement" which led to Schultz waiving juvenile jurisdiction, because Schultz suffered no significant detrimental reliance on the facts of this case, the parties here were free to continue negotiations and modify the first "agreement" or reach a second, different plea agreement for a final disposition of Schultz's case.

[5]     At oral argument, Schultz contended that under the "plea agreement" entered into at the juvenile waiver hearing, he was free to exercise his constitutional right to a jury trial then change his mind and "accept" the agreement in the middle of trial by pleading guilty to "some" of the charges.  The inequity of this extreme result is readily apparent, as it defeats the general purpose of a plea agreement, which is to avoid the necessity of the jury trial in the first place.